MICHIGAN UNITED CONSERVATION CLUBS v CITY OF
CADILLAC

1. STATUTES—FIREARMS CONTROL—CITY ORDINANCE—PREEMPTION.

A city ordinance which regulates the discharge of firearms within
the city limits was not preempted by a state statute which
regulates hunting, since firearms control and hunting are divis-
ible concerns, and since state regulation, supervision and licens-
ing of hunting is not complete and absolute and creates no
right exercisable everywhere and in every way not prohibited
by the state (MCLA 317.331 *et seq.;* Cadillac ordinance 674,
§ 6).

2. STATUTES—FIREARMS CONTROL—SUBSEQUENT ACT—PREEMPTION.

A prior legislative grant to a city of express police powers to
regulate the discharge of firearms was not preempted by a
subsequent state act which set forth a method of firearms
control, but which was inapplicable to cities (MCLA 317.331 *et
seq.;* 1873 PA 178, Ch 11, § 27).

3. STATUTES—REPEAL—SUBSEQUENT ACT—INTENT.

It is not to be presumed that one act repeals another, in the
absence of an express statement of repeal, unless a clear intent
to do so is found from the nature and content of the subsequent
act (MCLA 317.331 *et seq.;* 1873 PA 178, Ch 11, § 27).

Appeal from Wexford, William R. Peterson, J.
Submitted Division 3 November 7, 1973, at Grand
Rapids. (Docket No. 16406.) Decided January 16,
1974. Leave to appeal denied, 391 Mich 825.

Complaint by Michigan United Conservation
Clubs, Edwin K. Bosworth, Ernest Zetzman, and
James Jones against the City of Cadillac for a
judgment to declare an ordinance invalid. The
Department of Natural Resources intervened as

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions §§ 374–377.

plaintiff. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*H. Rhett Pinsky,* for plaintiffs.

*Edward W. TenHouten,* for defendant.

Before: R. B. Burns, P. J., and Danhof and O'Hara,* JJ.

R. B. Burns, P. J. Plaintiffs filed suit against the defendant for a declaratory judgment, asking that the court declare defendant's ordinance 674, § 6 invalid. The trial court held that the ordinance was valid and granted a judgment for the defendant. We affirm.

Cadillac ordinance 674, § 6, reads as follows:

*"Firearms; discharge prohibited.* It shall be unlawful for any person to discharge any firearm, gun, pistol, revolver, airgun, air pistol, or any other instrument producing a like effect and noise, or shoot a bow and arrow, within the city limits except in lawful defense of his person or property."

Plaintiffs claim the ordinance is invalid "because the effect of enforcing ordinance 674 against persons hunting migratory birds on Lake Cadillac during 'open season' is to interfere with lawful hunting activities as declared by the State of Michigan", in that 1967 PA 159; MCLA 317.331 *et seq.;* MSA 13.1397(101) *et seq.* controls hunting areas in the state and preempts any authority of cities to regulate hunting areas.

We quote part of Judge Peterson's opinion:

"Turning to plaintiffs' argument that the State has

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

pre-empted the field of hunting and firearm control, it must be first observed that the argument assumes but *one* subject of legislation; *i.e.*, the indivisible unity of (a) hunting and (b) firearm control. The second fallacy in the proposition is the assumption that the state regulation, supervision and licensing of hunting is not only complete and absolute on the terms expressly stated by such legislation, but creates a right exercisable everywhere and in everyway not expressly prohibited by the state.

"Without laboring the point, it is sufficient to say that apart from Act 159, the court has been cited to no act of the legislature expressly so proclaiming and no judicial precedent finding such a legislative intent.

"Accepting the general proposition that the legislature has pre-empted the field of hunting regulation, and that a city could not determine its own seasons for taking game, issue its own licenses to hunt, etc., it would seem rather obvious that the separate and distinct subject of firearm control would be a matter of local interest and a proper subject of local police-power legislation. If not, the first reaction of both layman and lawyer would be, 'Why not?'

"It is not necessary to discuss the theoretical limits of the general grant of police power[3] to home rule cities in view of the specific grant to the City of Cadillac. Cadillac was first incorporated by local act in 1877, the legislature including in this special act charter a general grant of all police powers provided for cities by Act 178 of the Session Laws of 1873. Section 27 of Chapter XI of Act 178, in turn, specifically authorized city enactment of ordinances of 'To regulate * * * the discharge of firearms, * * * .' * * *

"[3] Cases abound upholding such power in areas where there is also state regulation, *e.g.*, smoke abatement and air pollution; 'bottle clubs;' sale, display or advertising of contraceptive devices, *see People v Pennock,* 294 Mich 578 [293 NW 759 (1940)]; advertising; merchandising and fair trade practices; business hours, closing days and related blue laws; etc. *See also* OAG August 14, 1956, No. 2669, holding that a municipal ordinance *barring* dog kennels within the City of Holland was not inconsistent with the provision of the Dog Act providing for the *licensing* of kennels."

"Under this authority, the City of Cadillac adopted

Ordinance No. 163 in 1901, prohibiting the discharge of firearms within the city except as authorized by permit issued by the chief of police. Under the Home Rule Act of 1909, pursuant to which Cadillac adopted a charter in 1913, existing cities, their powers and their ordinances continued except as by charter thereafter modified. The prohibition against the discharge of firearms in the City of Cadillac has continued since 1901, under Ordinance 163 and re-enactment thereof as the city's ordinances were codified in 1966.

\* \* \*

"The motion for summary judgment, therefore, must turn squarely on the question whether Act 159 of 1967 overrides the specifically granted police power of the City of Cadillac and prescribes the exclusive means for firearm control therein? The answer is that it does not since it appears that Act 159 is not intended to apply to *any* city.

"The purpose of the act is stated as follows:

" 'An act to promote safety in hunting activities; to provide for area closures to hunting and discharge of firearms; to establish a hunting area control committee and to prescribe its powers and duties; to prescribe the powers and duties of the department of conservation, the department of state police, the department of attorney general and the county sheriffs; and to prescribe penalties for violations of this act.'

"Section 1 provides:

" 'A hunting area control committee, composed of a representative of the department of conservation, a representative of the department of state police, the township supervisor, or if he declines to serve, a representative selected by the township board, and a representative of the sheriff's department of the respective counties involved is established and shall perform such duties as are authorized by this act.'

"The draftsmanship of the act leaves much to be desired. There is no question but that the committee created by the act is permanent in nature, annual rotation of the chairmanship being required and provision being made for its costs of operation, etc. Commencing, 'A hunting area control committee \* \* \* is

established * * * .,' the act is clearly mandatory and instantly operative, *i.e.,* the committee is created forthwith by the act, only its membership remaining to be selected.

"Notwithstanding the singular grammar, '*A* * * * committee * * * is established * * * .,' it is clear from the content of the act that the legislature did not intend to create only *one* committee of statewide jurisdiction. In addition to representatives of the DNR and state police, it is to be composed of a representative of the sheriff's department and '*the* township supervisor, or if he declines to serve, a representative selected by *the* township supervisor, or if he declines to serve, a representative selected by *the* township board * * * .' There is no reference at any place in the act to cities, nor is there any provision for committee membership from the cities or city law enforcement agencies.[6] It is to be concluded that the legislature intended to create township committees, that each such committee has territorial jurisdiction co-extensive with that of the township governmental unit, and that the act is inapplicable to cities.

"[6] One can only wonder how the City of Cadillac got involved in the presentation of the Lake Cadillac problem to a committee supposedly created in conformity with the act, but with the city mayor and chief of police as members and no representative of any township or sheriff's department."

"That conclusion from the language of the act is consistent with the prior legislative grant of express police powers to the City of Cadillac to regulate the discharge of firearms.[7] In the absence of express statement of repeal, it is not to be presumed that one act repeals another unless a clear intent to do so is found from the nature and content of the subsequent act. Act 159 nowhere states or clearly implies such an intent to repeal the police power grant previously given the City of Cadillac, or other cities.

"[7] And consistent also with the identical grant to many special act cities, all fourth class cities and all cities created under Act 178 of the 1873 Session Laws."

"And that conclusion is consistent also with common sense. There is a difference between incorporated cities

and unincorporated township areas as to the problems, hazards and nuisances of hunting therein. It is not accident that there have been no city area closings under Act 159, or that there were no local acts closing cities to hunting prior thereto. That experience does not demonstrate a common experience that hunting in urban areas is safer and more widely accepted than in rural unincorporated townships. Rather, it reflects the contrary and the further assumption that the police powers of the cities have always been sufficient in Michigan to permit cities to deal with such problems locally.

"In short, the State has not pre-empted the field of firearm control by licensing hunting or by 1967 PA 159. To the contrary, the legislature has expressly given the City of Cadillac the police power to regulate firearms within its corporate limits, which grant was not repealed or modified by Act 159. That power has been properly exercised by the city through ordinance No. 163 and its succeeding ordinance, No. 674."

Affirmed. No costs, a public question.

All concurred.