CZYMBOR'S TIMBER, INC v CITY OF SAGINAW

Docket No. 263505. Submitted January 4, 2006, at Lansing. Decided January 26, 2006, at 9:00 a.m. Leave to appeal sought.

Czymbor's Timber, Inc.; and Michael Czymbor, owners of land within the city of Saginaw, brought an action for declaratory relief in the Saginaw Circuit Court against the city of Saginaw and others, challenging the validity of ordinances that prohibit the discharge of firearms and the discharge of projectiles from bows, slingshots, and similar devices within the city limits. The court, Lynda L. Heathscott, J., granted summary disposition for the city, concluding that the ordinances were enacted as a valid exercise of the city's police power and that MCL 324.41901, governing hunting regulation, does not preempt the ordinances. The plaintiffs appealed.

The Court of Appeals *held*:

MCL 324.41901, the "Hunting Area Control" portion in part 419 of the Natural Resources and Environmental Protection Act, does not preempt Saginaw City Ordinances, tit 10, §§ 130.02 and 130.03(d), which prohibit the discharge of firearms and other devices within the city limits. The authority of a home rule city to prohibit weapon discharges within city limits was not explicitly repealed by MCL 324.41901 and remains a valid exercise of the city's police powers. Firearm control is a subject distinct from hunting control. The Saginaw ordinances at issue are, therefore, not in direct conflict with state hunting laws and are not preempted by the state hunting laws.

Affirmed.

WEAPONS — HOME RULE CITIES — ORDINANCES PROHIBITING DISCHARGES — NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT — PREEMPTION.

Ordinances of home rule cities regulating the discharge of firearms and projectiles from certain other devices within city limits are not preempted by a state statute that regulates hunting; home rule cities have the authority to prohibit weapon discharges within city limits, and that authority has not been repealed by the state statute (MCL 324.41901).

*Warner Norcross & Judd LLP* (by *John J. Bursch* and *Daniel C. Persinger*), for the plaintiffs.

*Braun Kendrick Finkbeiner, P.L.C.* (by *Scott C. Strattard*), for the city of Saginaw.

Before: BANDSTRA, P.J., and FITZGERALD and WHITE, JJ.

FITZGERALD, J. Plaintiffs filed this action for declaratory relief to challenge the validity of two ordinances that prohibit the discharge of firearms and the discharge of projectiles by bows, slingshots, and similar devices within the city limits of Saginaw. Neither ordinance contains an exception for hunting. Plaintiffs alleged that the ordinances are preempted by MCL 324.41901. Defendant city of Saginaw moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), contending that the ordinances were enacted as a valid exercise of the city's police power and that § 41901 did not preempt the ordinances. The trial court granted defendant's motion and subsequently denied plaintiffs' motion for reconsideration. Plaintiffs appeal as of right. We affirm.

This lawsuit concerns two Saginaw city ordinances. Saginaw City Ordinances, tit 10, § 130.02, states:

> No person shall discharge or propel any arrow, metal ball, pellet, or other projectile by use of any bow, long bow, cross bow, slingshot, or similar device within the City limits.

Saginaw City Ordinances, tit 10, § 130.03(D), states:

> (1) Discharge Prohibited. It shall be unlawful for any person to discharge a firearm in the City.
>
> (2) Exceptions. It shall not be a violation of this section to discharge a firearm under the following conditions:
>
> (a) In the protection of life;

(b) Law enforcement officers in the performance of their duties;

(c) An established and lawfully permitted educational program properly supervised;

(d) Military functions, such as parades, funerals, firing blank charges.

Plaintiffs agree that the enactment of ordinances restricting the discharge of firearms and bows and arrows[1] within city limits is a proper subject of police power legislation.[2] But plaintiffs contend that the ordinances are invalid to the extent that the ordinances interfere with lawful hunting activities because the regulation of hunting is a field completely occupied by state statute and regulation by the Department of Natural Resources (DNR). Plaintiffs assert that defendant must comply with part 419 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.41901,[3] before restricting or banning the discharge of firearms or bows and arrows. Defendant contends that regulation of firearms is distinct from regulation of hunting and therefore defendant had no obligation to comply with § 41901 before enacting the ordinances restricting the discharge of firearms and bows and arrows within city limits.

Under § 41901(1), the DNR may, in the interest of public safety and the general welfare, "regulate and prohibit hunting, and the discharge of firearms and bow and arrow, . . . on those areas established under this

---

[1] Use of the term "bows and arrows" in this opinion includes all the projectiles included in Saginaw City Ordinances, § 130.02.

[2] Home rule cities, including Saginaw, have specific authority to enact ordinances in order to advance the interests of the city, including public peace and the health and the safety of persons and property. See Const 1963, art 7, § 22 and the Home Rule City Act, MCL 117.1 *et seq.*

[3] Part 419 is captioned, "Hunting Area Control."

part where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons . . . ." Section 41901(1) also sets forth a procedure by which a "governing body of any political subdivision" may request the DNR to recommend closure of an area if the governing body "determines that the safety and well-being of persons or property are endangered by hunters or discharge of firearms or bow and arrows . . . ."[4]

---

[4] Specifically, MCL 324.41901 states:

(1) In addition to all of the department powers, in the interest of public safety and the general welfare, the department may regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as provided in this part, on those areas established under this part where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who can reasonably be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in the areas or will impair the general safety and welfare. In addition, the department may determine and define the boundaries of the areas. Areas or parts of areas may be closed throughout the year. The department, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons that are not inconsistent with law. *Whenever the governing body of any political subdivision determines that the safety and well-being of persons or property are endangered by hunters or discharge of firearms or bow and arrows, by resolution it may request the department to recommend closure of the area as may be required to relieve the problem.* Upon receipt of a certified resolution, the department shall establish a date for a public hearing in the political subdivision, and the requesting political authority shall arrange for suitable quarters for the hearing. The department shall receive testimony on the nature of the problems resulting from hunting activities and firearms use from all interested parties on the type, extent, and nature of the closure, regulations, or controls desired locally to remedy these problems.

(2) Upon completion of the public hearing, the department shall cause such investigations and studies to be made of the area

The trial court rejected plaintiffs' challenge to the validity of Saginaw City Ordinances, tit 10, §§ 130.02 and 130.03(D), holding in pertinent part:

> Although the DNR retains power and may regulate and prohibit hunting in the interest of public safety and the general welfare, pursuant to MCL [] 324.41901, that is not the issue here. Firearm control is a subject distinct from the field of hunting, and the DNR Act does not preempt the local ordinances enacted by the City of Saginaw.

The issue on appeal, as framed by the parties, concerns whether defendant's ordinances are invalid because they are preempted by MCL 324.41901. This Court reviews de novo a trial court's order granting or denying summary disposition. *Straus v Governor,* 459 Mich 526, 533; 592 NW2d 53 (1999). The issue of preemption is a legal question that this Court reviews de novo. *Thomas v United Parcel Service,* 241 Mich App 171, 174; 614 NW2d 707 (2000).

State law preempts a municipal ordinance in two situations: (1) where the ordinance directly conflicts with a state statute or (2) where the statute completely occupies the field that the ordinance attempts to regulate. *Rental Prop Owners Ass'n of Kent Co v Grand Rapids,* 455 Mich 246, 257; 566 NW2d 514 (1997). A direct conflict exists when the ordinance permits what the statute prohibits or the ordinance prohibits what the statute permits. *People v Llewellyn,* 401 Mich 314, 322 n 4; 257 NW2d 902 (1977). Although plaintiffs argue on appeal that the ordinances are in direct conflict with state hunting laws, this argument is

---

as it considers appropriate and shall then make a statement of the facts of the situation as found at the hearing and as a result of its investigations. The department shall then prescribe regulations as are necessary to alleviate or correct the problems found. [Emphasis added.]

directly contrary to their position in the trial courts.[5]
" 'A party may not take a position in the trial court and
subsequently seek redress in an appellate court that is
based on a position contrary to that taken in the trial
court.' " *Blazer Foods Inc v Restaurant Properties, Inc,*
259 Mich App 241, 252; 673 NW2d 805 (2003) (citation
omitted).

No published decisions address the preemptive effect
of § 41901 on municipal firearm regulation ordinances,
but this Court addressed the issue under a prior version
of § 41901 in *Michigan United Conversation Clubs v
City of Cadillac,* 51 Mich App 299; 214 NW2d 736
(1974) (*MUCC*). In *MUCC,* this Court considered an
ordinance making it unlawful "for any person to dis-
charge any firearm . . . or shoot a bow and arrow,
within the city limits except in lawful defense of his
person or property." *Id.* at 300. The plaintiffs argued
that the enforcement of the ordinance against persons
hunting during open season was invalid because 1967
PA 159, as amended (codified at 1970 CL 317.331 *et
seq.*) controlled hunting areas and preempted city regu-
lation. The version of MCL 317.332 in effect at the time
of that decision is substantially similar to § 41901.

This Court affirmed the trial court's ruling that the
ordinance was valid and evidently adopted the trial
court's opinion as its own. The trial court reasoned that
"Act 159" did not preempt the ordinance for several
reasons. First, the field of hunting regulation is distinct
from firearm control. *MUCC, supra* at 301. Second, the
Legislature specifically granted the city of Cadillac the
authority to regulate the discharge of firearms when

---

[5] In response to defendant's motion for summary disposition, plaintiffs
stated, "Defendant and Plaintiffs agree that the ordinance, by not
mentioning 'hunting' is not in 'direct conflict' with the hunting control
act statute."

the city was first incorporated by local act in 1877. *Id.* at 301. Third, "Act 159" is inapplicable to cities. *MUCC, supra* at 302-303. The Court stated:

"That conclusion from the language of the act is consistent with the prior legislative grant of express police powers to the City of Cadillac to regulate the discharge of firearms. In the absence of express statement of repeal, it is not to be presumed that one act repeals another unless a clear intent to do so is found from the nature and content of the subsequent act. Act 159 nowhere states or clearly implies such an intent to repeal the police power grant previously given the City of Cadillac, or other cities.

"And that conclusion is consistent also with common sense. There is a difference between incorporated cities and unincorporated township areas as to the problems, hazards and nuisances of hunting therein. It is no accident that there have been no city area closings under Act 159, or that there were no local acts closing cities to hunting prior thereto. That experience does not demonstrate a common experience that hunting in urban areas is safer and more widely accepted than in rural unincorporated townships. Rather, it reflects the contrary and the further assumption that the police powers of the cities have always been sufficient in Michigan to permit cities to deal with such problems locally." [*MUCC, supra* at 303-304, quoting the trial court's opinion.]

*MUCC* squarely addressed the issue presented in this case. Although the statutes on which *MUCC* was based were repealed, a comparison of the former MCL 317.332 and the current version of MCL 324.41901 shows that the statutes are very similar. Indeed, by enacting the NREPA in 1994, "the Legislature reorganized, without fundamentally altering, the scattered array of existing legislation related to the environment in one all-inclusive statute." *Howell Twp v Rooto Corp,* 258 Mich App 470, 479; 670 NW2d 713 (2003). The reorganization continued in 1995 when the Legislature amended

the NREPA by 1995 PA 57. The statutes that are codified at MCL 324.41091 *et seq.* were enacted as part of Act 57. The Senate Fiscal Agency Bill Analysis, HB 4348-4385, April 6, 1995, suggests that no substantive change with respect to the applicability of the provisions concerning hunting control was intended.[6] And the language prescribing the power to regulate in MCL 317.332(1) was virtually unchanged in subsection 41901(1).[7] With the exception of *MUCC's* holding that

---

[6] The Bill Analysis notes that "the bills would delete references to—and, in some instances, repeal—various natural resources acts that created certain committees, boards, and commissions. Further, House Bill 4385 would transfer the powers and duties of these committees, boards, and commissions to the Department of Natural Resources (DNR)."

[7] MCL 317.332(1) provided in part:

In the interest of public safety and the general welfare, the committee is empowered to regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as herein provided, on those areas established under the provisions of this act where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure or disturb persons who can reasonably be expected to be present in such areas or to destroy or damage buildings or personal property situated or customarily situated in such areas or will impair the general safety and welfare.

MCL 324.41901(1) provides in part:

In addition to all of the department powers, in the interest of public safety and the general welfare, the department may regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as provided in this part, on those areas established under this part where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who can reasonably be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in the areas or will impair the general safety and welfare.

Plaintiffs also argue that MCL 123.1104, a statute cited by the trial court, should not be interpreted to allow cities to enact ordinances that effectively ban hunting. MCL 123.1104 is part of an act that restricts local units of government from imposing certain restrictions involving

the former statutes did not apply to cities, the *MUCC* decision remains good law under the revised statutes.[8] As noted earlier, home rule cities like defendant are still granted the authority to take measures to assure public peace and safety. See n 2. That authority includes the prohibition of weapon discharges within city limits, and that authority has not been repealed by § 41901. Plaintiffs have not presented a persuasive reason for this Court to distinguish *MUCC*'s holding that firearm control is a subject distinct from the field of hunting control. We therefore conclude that § 41901 does not preempt Saginaw City Ordinances, tit 10, §§ 130.02 and 130.03(D).

Affirmed.

---

firearms and states that the act "does not prohibit a city or a charter township from prohibiting the discharge of a pistol or other firearm within the jurisdiction of that city or charter township." But whether an ordinance that prohibits the discharge of firearms and effectively bans hunting must be enacted pursuant to the procedure in MCL 324.41901 and MCL 324.41902 is a distinct issue upon which MCL 123.1104 does not shed any light.

[8] Defendant concedes in its brief on appeal that the revised statutes apply to all municipalities.