**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Clifford W. Taylor      Michael F. Cavanagh
                        Elizabeth A. Weaver
                        Marilyn Kelly
                        Maura D. Corrigan
                        Robert P. Young, Jr.
                        Stephen J. Markman

FILED JUNE 20, 2007

CZYMBOR'S TIMBER, INC., and
MICHAEL CZYMBOR,

        Plaintiffs-Appellants,

v                                                    No. 130672

CITY OF SAGINAW,

        Defendant-Appellee,

and

SAGINAW CITY COUNCIL and
DEBORAH KIMBLE,

        Defendants.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

Plaintiffs, property owners in the city of Saginaw, brought suit to challenge the validity of two city ordinances that ban the discharge of firearms and the discharge of arrows by bows within city limits. Plaintiffs claim that, because neither ordinance contains a hunting exception, the ordinances conflict with and are preempted by MCL 324.41901, a statute that gives the Michigan Department

of Natural Resources (DNR) the authority to regulate and prohibit the discharge of firearms and bows under certain circumstances.

However, because plaintiffs have not made the requisite showing that their property is a hunting area "established under" part 419 of the Natural Resources and Environmental Protection Act, MCL 324.41901 *et seq*., there is no need to determine whether defendants' ordinances are preempted by the statute. Moreover, the administrative rule promulgated by the DNR to administer part 419, 2007 AC, R 299.3048, pertains only to townships, not cities such as defendant city of Saginaw. We therefore affirm the judgment of the Court of Appeals, although for different reasons.[1]

## I. FACTS AND PROCEDURAL HISTORY

Plaintiffs own a 56-acre parcel of property located in the city of Saginaw. Plaintiffs claim that the property has been used for hunting for many years.

In 1999, defendant city of Saginaw enacted Saginaw Ordinances, title ix, § 130.03(D), which prohibits the discharge of firearms within the city.[2] The

---

[1] In affirming the judgment of the Court of Appeals, we do not address and take no position on the Court of Appeals preemption analysis.

[2] The ordinance provides:

(1) *Discharge Prohibited*. It shall be unlawful for any person to discharge a firearm in the City.
(2) *Exceptions*. It shall not be a violation of this section to discharge a firearm under the following conditions:
(a) In the protection of life;
(b) Law enforcement officers in the performance of their duties;

(continued…)

2

ordinance contains four exceptions, but does not provide an exception for hunting. Subsequently, in 2002, defendant enacted Saginaw Ordinances, title ix, § 130.02, which prohibits the discharge of many types of projectiles, including arrows "by use of any bow . . . ."[3] This ordinance contains no exceptions.

In 2003, plaintiff Michael Czymbor sought a hunting permit from the DNR. However, according to plaintiffs' affidavit, the DNR denied plaintiff a hunting permit because the DNR "understood that hunting was not allowed" on plaintiffs' property as a result of defendants' ordinances. The DNR further indicated to plaintiff that it would issue hunting permits in the future if the city ordinances are repealed and "hunting is restored to the property."

Plaintiffs filed an action for a declaratory judgment and a motion for a temporary restraining order, challenging the validity of the two ordinances because neither contained an exception for hunting. Plaintiffs claimed that the ordinances were invalid to the extent that they interfered with lawful hunting activity. Because the DNR was granted the authority to regulate or prohibit the

_____

(continued…)
      (c) An established and lawfully permitted educational program properly supervised;
      (d) Military functions, such as parades, funerals, firing blank charges.

[3] The ordinance provides that "[n]o person shall discharge or propel any arrow, metal ball, pellet or other projectile by use of any bow, long bow, cross bow, slingshot or similar device within the City limits."

3

discharge of hunting weapons under MCL 324.41901, plaintiffs argued that the statute preempted the ordinances.

Subsequently, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), contending that the ordinances were enacted as a valid exercise of the city's police power under the Home Rule City Act, MCL 117.1 *et seq.* Moreover, defendants claimed that § 41901 did not preempt the city ordinances because the regulation of the discharge of weapons was a subject area that was separate and distinct from the regulation of hunting. The trial court granted defendants' motion for summary disposition, concluding that the statute did not preempt the local ordinances because the ordinances did not regulate the same area as the statute.

In a published opinion, the Court of Appeals affirmed the judgment of the lower court, holding that the city ordinances were not preempted by MCL 324.41901.[4] The panel noted that state law preempts a municipal ordinance where either a direct conflict exists between the enactments, or where the statute completely occupies the field that the ordinance attempts to regulate. Because no direct conflict existed, the panel analyzed the "field preemption" issue, concluding that the statute did not preempt the ordinances because "firearm control is a

---

[4] *Czymbor's Timber, Inc v City of Saginaw*, 269 Mich App 551; 711 NW2d 442 (2006).

4

subject distinct from the field of hunting control" and that defendant city had authority as a home rule city to enact measures to assure public peace and safety.[5]

Plaintiffs sought leave to appeal in this Court, arguing that the city's antidischarge ordinances were preempted by state law. This Court granted leave to appeal.[6] Subsequently, after oral argument, we directed the parties and amicus curiae DNR to file supplemental briefs.[7]

## II. STANDARD OF REVIEW

Resolution of the issue presented in this case involves the interpretation of MCL 324.41901. Statutory interpretation is a question of law that we review de novo.[8] Moreover, this Court reviews the decision to grant or deny summary disposition de novo.[9]

---

[5] *Czymbor's*, *supra* at 559.

[6] 475 Mich 909 (2006).

[7] 477 Mich 1277 (2007). Specifically, we directed the parties and amicus curiae to address "(1) whether privately owned land is generally open for hunting with the permission of the owner unless a local government has taken steps to close the land and, if so, what, if any, other procedures exist in addition to MCL 324.41901 to allow a local government to close land to hunting; or (2) whether, instead, privately owned land must first be established as a hunting area before hunting is allowed and, if so, what are the current statutory and regulatory procedures for establishing hunting areas."

[8] *Reed v Yackell*, 473 Mich 520, 528; 703 NW2d 1 (2005).

[9] *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 60; 718 NW2d 784 (2006).

## III. ANALYSIS

## A. THE STATUTE

Part 419 of the Natural Resources and Environmental Protection Act, entitled "Hunting Area Control," consists of five statutory provisions. The statute at issue, MCL 324.41901, provides, in relevant part:

> (1) In addition to all of the department powers, in the interest of public safety and the general welfare, *the department may regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as provided in this part, on those areas established under this part where hunting or the discharge of firearms or bow and arrow may or is likely to kill*, injure, or disturb persons who can reasonably be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in the areas or will impair the general safety and welfare. *In addition, the department may determine and define the boundaries of the areas.* Areas or parts of areas may be closed throughout the year. The department, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons that are not inconsistent with law. Whenever the governing body of any political subdivision determines that the safety and well-being of persons or property are endangered by hunters or discharge of firearms or bow and arrows, by resolution it may request the department to recommend closure of the area as may be required to relieve the problem. [Emphasis added.]

The clear language of § 41901 grants the DNR the authority to "regulate and prohibit" the discharge of firearms and bow and arrow, but that authority is limited to "*those areas established under this part . . . .*" (Emphasis added.) In this case, plaintiffs have made no showing that their property is an area "established under" part 419. Because plaintiffs have not made the requisite showing, there is no basis to conclude that the statute is applicable to plaintiffs' property.

6

In their supplemental briefs, plaintiffs and the DNR maintain that plaintiffs' property need not be "established" under part 419 because the DNR has the "exclusive authority to regulate the taking of game" under MCL 324.40113a(2), and that hunting on private land is generally permitted everywhere, subject to the permission of the landowner.[10] However, the issue before us today is not where hunting is permitted. Rather, the issue before us is the applicability of MCL 324.41901.[11]

The plain language of the statute requires that property be "established under" part 419 before the regulatory provisions of § 41901 apply. In other words, the DNR's authority to regulate the discharge of weapons on property under § 41901, and any potential reciprocal limitation on the city of Saginaw's ability to

---

[10] The other hunting limitation identified by the DNR can be found at MCL 324.40111(4), which prohibits hunting or discharging a weapon within 150 yards of an occupied building without first obtaining the written permission of the landowner. A violation of MCL 324.40111(4) is a misdemeanor. MCL 324.40118.

[11] Justice Weaver's dissenting opinion claims that the plain language of MCL 324.41901 "explicitly authorizes the DNR to determine and define the boundaries of hunting areas in Michigan." *Post* at 4.

However, MCL 324.41901(1), which is substantively identical to its predecessor statute, MCL 317.332, merely states that "[i]n addition, the department may determine and define the boundaries of the areas." Read in context, the statute indicates that, in addition to regulating and prohibiting hunting and firearms "where hunting or the discharge of firearms or bow and arrow may or is likely to kill . . . ," the department may also define the boundaries of the areas. Thus, the sentence at issue in § 41901 indicates that that DNR may "determine and define the boundaries of the areas" where hunting has been *restricted*, and does not address where hunting is permitted.

7

prohibit the discharge of weapons within its city limits, exists only to the extent that the subject property has been "established under" part 419. While the DNR enjoys "the exclusive authority to regulate the taking of game," MCL 324.40113a(1), there is no indication that the legislative grant of authority to regulate the taking of game is superior to or supersedes the specific legislative grant of authority at issue here—*the authority to regulate the discharge of weaponry.*[12] In any event, the DNR cannot exceed the authority granted by the Legislature to regulate the discharge of weaponry under MCL 324.41901.[13] Moreover, while the DNR's interpretation of the statute is given some measure of deference, its construction cannot conflict with the plain language of the statute,[14] which requires that property be "established under" under part 419 before the regulatory provisions of § 41901 are applicable.[15]

---

[12] In fact, the first phrase in MCL 324.41901(1), stating that the authority to regulate the discharge of weaponry is "[i]n *addition to* all of the department powers," (emphasis added) indicates that this authority is *coequal,* rather than inferior, to the DNR's authority to regulate the taking of game.

[13] *Blank v Dep't of Corrections*, 462 Mich 103; 611 NW2d 530 (2000); *York v Detroit (After Remand)*, 438 Mich 744; 475 NW2d 346 (1991); *Coffman v State Bd of Examiners in Optometry*, 331 Mich 582; 50 NW2d 322 (1951).

[14] *Catalina Marketing Sales Corp v Dep't of Treasury*, 470 Mich 13; 678 NW2d 619 (2004); *Ludington Service Corp v Acting Comm'r of Ins,* 444 Mich 481; 511 NW2d 661 (1994).

[15] In dissent, Justice Weaver opines that plaintiffs' property is "established under" part 419 because "Saginaw County, in which plaintiffs' land is located, is mentioned multiple times" in the Wildlife Conservation Order (WCO). *Post* at 6.
(continued…)

8

Because plaintiffs have not shown that their property is "established under" part 419 of the Natural Resources and Environmental Protection Act, there is no basis to conclude that the statute is applicable, thus eliminating the need to decide whether defendants' ordinances are preempted by MCL 324.41901.

## B. THE ADMINISTRATIVE RULE

Additionally, while not discussed by the parties or the DNR, we also note that the current administrative rule promulgated by the DNR to administer part 419 applies to townships but not to cities such as defendant. Thus, even if plaintiffs could show that their property was "established under" part 419, which they cannot, the administrative mechanism currently in place would not apply.

2007 AC, R 299.3048 provides:

> (1) The hunter area control committee was created by section 1 of Act No. 159 of the Public Acts of 1967. It is composed of a representative of the department of natural resources, a representative of the department of state police, *the township supervisor*, and a representative of the sheriff's department of the counties involved.

> (2) The committee selects a chairman from its members who serves for a year, then alternates with a member from another agency. The department of natural resources performs clerical, operational, and administrative duties of the committee. Expenses incurred are borne by the member's department. Costs of surveys and actions outside the committee and the sheriff's department are borne by the department of natural resources.

---

(continued…)
The WCO can be found at <http://www.michigan.gov/documents/Wcao_134367_7.html> (accessed May 2, 2007). However, nothing in the WCO references, much less purports to establish areas under MCL 324.41901 *et seq.*

(3) In the interest of public safety and the general welfare, the committee may regulate and prohibit hunting and the discharge of firearms and bow and arrow on those areas where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who reasonably can be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in such areas or will impair the general safety and welfare. The committee may determine and define the boundaries. Areas may be closed throughout the year or parts thereof. The committee, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons not inconsistent with law. [Emphasis added.]

While the administrative rule was originally promulgated to administer the predecessor statute to MCL 324.41901, there is no indication that the current rule does not remain in full effect.[16] Justice Weaver's dissent claims that reading Rule 299.3048 according to its plain language is contrary to "a plain reading of part 419." *Post* at 11. However, nothing in part 419 describes or requires any particular mechanism of implementation. Rather, a "plain reading of part 419" indicates that the mechanism of implementation is left to the discretion of the DNR. Here, it is clear that the DNR has chosen to administer MCL 324.41901 by means of Rule 299.3048.[17]

---

[16] See MCL 324.105; MCL 324.41902(3). Of course, if the DNR no longer believes that the administrative rule "adequately cover[s] the matter," then the DNR is encouraged to promulgate new rules in conformance with the Administrative Procedures Act, MCL 24.201 *et seq*.

[17] It should also be noted that *each and every* hunting restriction promulgated under part 419 involves only townships, and does not involve a single city or village. See Local Hunting and Firearms Controls, 2007 AC, R

(continued…)

10

## IV. CONCLUSION

The actions of the DNR throughout these proceedings have been, to say the least, contradictory. Initially, the DNR refused to issue hunting permits to Michael Czymbor *solely* because of the existence of defendants' discharge ordinances. However, the DNR now claims that these same ordinances are invalid to the extent that they do not provide a hunting exception, because only the DNR may prohibit the discharge of weaponry in hunting areas under MCL 324.41901. Moreover, the department claims that areas need not be established under part 419, despite the clear language of MCL 324.41901, because its "exclusive authority to regulate the taking of game" under § 40113a(2) obviates the need to comply with the requirements of § 41901. Additionally, the DNR has failed to acknowledge the existence or effect of Rule 299.3048. Certainly, if the DNR no longer wishes to acquiesce to defendants' antidischarge ordinance, it is free to take the necessary steps to amend its administrative rules to conform to the view it urges in its briefs. It may not, however, simply ignore the language of MCL 324.41901 or the requirements of the Administrative Procedures Act.[18]

---

(continued…)
317.101.1–R 317.182.12. The last time a local hunting control was implemented was in Brownstown Township in 2004. See Department of Natural Resources, Hunter Safety Section, Local Hunting Area Controls, HC-82-04-001.

[18] The Administrative Procedures Act requires an agency to give notice of proposed rules or rule changes, to hold a public hearing, and to submit the proposed rules or rule changes to the Legislature's Joint Committee on Administrative Rules for review. MCL 24.241 through 24.246. If the committee

(continued…)

The judgment of the Court of Appeals granting summary disposition to defendants is affirmed, although for an alternative rationale.

Robert P. Young, Jr.
Clifford W. Taylor
Maura D. Corrigan
Stephen J. Markman

---

(continued…)
objects to a proposed rule, both the Legislature and the Governor must approve legislation repealing or delaying the effective date of the rule. MCL 24.245a.

S T A T E   O F   M I C H I G A N

SUPREME COURT

CZYMBOR'S TIMBER, INC., and
MICHAEL CZYMBOR,

       Plaintiffs-Appellants,

v                                             No. 130672

CITY OF SAGINAW,

       Defendant-Appellee,

and

SAGINAW CITY COUNCIL and
DEBORAH KIMBLE,

       Defendants.

_____

CAVANAGH, J. (*dissenting*).

      I believe that the city of Saginaw's ordinance prohibiting the discharge of firearms and other weapons within city limits is preempted because there is no exception for the taking of game. Pursuant to MCL 324.40113a(2), the Department of Natural Resources (DNR) has exclusive authority to regulate the taking of game. Allowing the city of Saginaw to prohibit the discharge of firearms and other weapons without an exception for the taking of game and without seeking approval from the DNR to close the city of Saginaw to the taking of game usurps the exclusive authority of the DNR to regulate the taking of game

throughout the state and makes it impossible for the DNR to fulfill its statutorily mandated duties.

Michael F. Cavanagh

S T A T E   O F   M I C H I G A N

SUPREME COURT

CZYMBOR'S TIMBER, INC., and
MICHAEL CZYMBOR,

       Plaintiffs-Appellants,

v                                        No. 130672

CITY OF SAGINAW,

       Defendant-Appellee,

and

SAGINAW CITY COUNCIL and
DEBORAH KIMBLE,

       Defendants.

_____

WEAVER, J. (*dissenting*).

    I dissent from the majority's affirmance of the judgment of the Court of Appeals. I would hold that the plaintiffs' land is a hunting area as defined by the Michigan Department of Natural Resources and, as such, is subject to hunting regulations and restrictions prescribed by MCL 324.41901 *et seq.*

    This case arises out of defendant city of Saginaw's enactment of two ordinances prohibiting the discharge of firearms or bows and arrows within the city limits. The ordinances as enacted do not contain an exception for hunting activities. The Michigan Legislature has mandated that the Michigan Department of Natural Resources (DNR) shall have the exclusive power to "regulate and

prohibit hunting, and the discharge of firearms and bow and arrow" within the state.[1]  A governing body of any political subdivision may request that the DNR close an area to hunting for safety or other concerns.[2]  However, it is ultimately the DNR, not the local government, that regulates hunting, including the imposition of an absolute hunting prohibition.[3]  When the state reserves exclusive jurisdiction to regulate a field, a municipal corporation cannot regulate the same field if the regulation results in a conflict between state regulations and local regulations.[4]

Contrary to the majority's interpretation, the plain language of MCL 324.41901 *et seq.*, hereafter referred to as part 419, of the Natural Resources and Environmental Protection Act (NREPA), provides the exclusive method by which the discharge of weapons may be prohibited in hunting areas, and explicitly authorizes the DNR to determine and define the boundaries of hunting areas in Michigan, to which part 419 applies.  The majority's holding that 2007 AC, R 299.3048 limits the application of part 419 exclusively to townships contravenes the plain language of part 419 and belies basic rules of interpretation governing administrative regulations.  A local government must follow the procedure outlined in part 419 to obtain additional hunting restrictions.

---

[1] MCL 324.41901(1); see MCL 324.40113a.

[2] MCL 324.41901(1).

[3] MCL 324.41901(1), (2).

[4] *People v Llewellyn*, 401 Mich 314, 322 n 4; 257 NW2d 902 (1977).

2

## A. MCL 234.41901 EXPLICITLY AUTHORIZES THE DNR TO DETERMINE AND DEFINE THE BOUNDARIES OF HUNTING AREAS IN MICHIGAN.

Part 419, Hunting Area Control, of the NREPA, provides a local governmental unit the only means of imposing additional hunting safety regulations beyond those originally prescribed by the DNR. The local governing body must ask the DNR to enact additional safety measures in an area if the governing body thinks that the "safety and well-being of persons or property are endangered by hunters or discharge of firearms or bows and arrows . . . ." MCL 324.41901(1). Part 419 vests the power to "regulate and prohibit hunting, and the discharge of firearms and bow and arrow" in the DNR. MCL 324.41901(1). In the event that a local governing body deems that the safety measures in place are inadequate to protect the general welfare, the local governing body can petition the DNR for a resolution closing additional lands to hunting.[5] The DNR must then hold a public hearing, conduct investigations, and submit its findings of facts and recommendations to the governing body of the local governmental unit.[6]

After receiving the DNR's recommendations, the governing body can either accept the measures recommended by the DNR, or it can do nothing. If the governing body accepts the measures recommended by the DNR, it can incorporate the recommendations into a local ordinance that is identical to the

---

[5] MCL 324.41901.

[6] *Id.*

DNR's recommendations.[7]  The DNR retains authority to unilaterally terminate closure of an area to hunting.[8]  If the governing body chooses to reject the DNR's recommendations, part 419 mandates that no further action be taken on the matter.[9]

Contrary to the majority's interpretation, the plain language of part 419 explicitly authorizes the DNR to determine and define the boundaries of hunting areas in Michigan.  MCL 324.41901 provides:

> (1) In addition to all of the department powers, in the interest of public safety and the general welfare, the department may regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as provided in this part, on those areas established under this part where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who can reasonably be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in the areas or will impair the general safety and welfare. *In addition, the department may determine and define the boundaries of the areas*.  Areas or parts of areas may be closed throughout the year. The department, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons that are not inconsistent with law. Whenever the *governing body of any political subdivision* determines that the safety and well-being of persons or property are endangered by hunters or discharge of firearms or bow and arrows, by resolution it may request the department to recommend closure of the area as may be required to relieve the problem. Upon receipt of a certified resolution, the department shall establish a date for a public hearing in the political subdivision, and the requesting political authority shall arrange for suitable quarters for the hearing. The department shall receive testimony on the nature of the problems resulting from hunting

---

[7] MCL 324.41902(1).

[8] MCL 324.41903.

[9] MCL 324.41902(1).

4

activities and firearms use from all interested parties on the type, extent, and nature of the closure, regulations, or controls desired locally to remedy these problems.

(2) Upon completion of the public hearing, the department shall cause such investigations and studies to be made of the area as it considers appropriate and shall then make a statement of the facts of the situation as found at the hearing and as a result of its investigations. The department shall then prescribe regulations as are necessary to alleviate or correct the problems found. [Emphasis added.]

The majority is correct that part 419 only governs hunting weapons regulation of "those areas established under this part." However, plaintiffs' land is subject to part 419 because plaintiffs' land is a hunting area that the DNR regulates.

The DNR extensively and pervasively regulates hunting in the state of Michigan. In 1996 the people of Michigan, through legislative referendum, vested the DNR with the "exclusive authority to regulate the taking of game" in the state of Michigan.[10] In exercising its exclusive authority to regulate hunting, the DNR may, among other things, issue orders to "[e]stablish lawful methods of taking game," "[e]stablish geographic areas within the state where certain regulations may apply to the taking of animals," and "[r]egulate the hours during which animals may be taken."[11]

_____

[10] Part 401, Wildlife Conservation, of the NREPA, MCL 324.40113a (2).

[11] MCL 324.40107(1)(e), (h), and (k).

5

The orders promulgated by the DNR to regulate hunting are collectively known as the Wildlife Conservation Order (WCO).[12] Chapter XII of the order, titled "Management Areas Defined," defines not only the areas in Michigan where hunting is allowed, but what type of animal can be hunted in which area. Saginaw County, in which plaintiffs' land is located, is mentioned multiple times in the order. WCO 12.73, 12.73a, and 12.73b define the parts of Saginaw County that are subject to DNR regulations with respect to deer hunting—the areas covered include the city of Saginaw. WCO 12.635 defines all of Saginaw County as a hunting area with respect to Spring wild turkey management. WCO 12.641 defines all of Saginaw County as a hunting area with respect to turkey management. WCO 12.673 defines all of Saginaw County as a hunting area with respect to Fall wild turkey management. WCO 12.700 and 12.701 define all of Saginaw County as a hunting area with respect to goose management. And the list continues.

Clearly, the DNR considers Saginaw County, and the city of Saginaw contained within the county, a hunting area to be managed, properly defined, and established by the DNR. Consequently, because plaintiff's land is designated as a hunting area by the DNR, any changes to DNR hunting regulations in the area must follow the procedure outlined in part 419. The DNR has the authority to

---

[12] The Wildlife Conservation Order can be found at <http://www.michigan.gov/documents/Wcao_134367_7.html> (accessed May 2, 2007).

regulate the discharge of weapons for hunting on plaintiffs' property under part 419, and the city of Saginaw must follow the procedure outlined in part 419 to enact local ordinances that further restrict hunting.

## B. LEGISLATIVE HISTORY AND ADMINISTRATIVE RULES APPLIED TO PART 419

Given that the DNR has the explicit statutory authority to establish and define hunting areas under part 419, including regulating hunting on plaintiffs' land, it is now necessary to consider the effect of administrative rules already enacted for the administration of the regulatory provisions of part 419. An administrative agency cannot go beyond the bounds of the statutory authority granted by the Legislature.[13]

MCL 317.332, enacted by 1967 PA 159, is the predecessor statute to 324.41901 (part 419). MCL 317.332 was repealed in 1995 by 1995 PA 57, which enacted 324.41901. MCL 317.332 provided:

> (1) In the interest of public safety and the general welfare, the committee is empowered to regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as herein provided, on those areas established under the provisions of this act where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who can reasonably be expected to be present in such areas or to destroy or damage buildings or personal property situated or customarily situated in the such areas or will impair the general safety and welfare; and the committee is empowered to determine and define the boundaries of

---

[13] *York v Detroit (After Remand)*, 438 Mich 744; 475 NW2d 346 (1991); *Coffman v State Bd of Examiners in Optometry*, 331 Mich 582; 50 NW2d 322 (1951).

such areas. Areas may be closed throughout the year or parts thereof. The committee, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons that are not inconsistent with law. Whenever the governing body of any political subdivision determines that the safety and well-being of persons or property are endangered by hunters or discharge of firearms or bow and arrows, by resolution it may request the committee to recommend such area closure as may be required to relieve the problem. Upon receipt of a certified resolution, the committee shall establish a date for a public hearing in the political subdivision, and the requesting political authority shall arrange for suitable quarters for the hearing. The committee shall receive testimony on the nature of the problems resulting from hunting activities and firearms use from all interested parties on the type, extent, and nature of the closure, regulations, or controls desired locally to remedy these problems.

(2) Upon completion of the public hearing, the committee shall cause such investigations and studies to be made of the area as it deems appropriate and shall then make a statement of the facts of the situation as found at the hearing and as a result of its investigations. The committee shall then prescribe such regulations as are necessary to alleviate or correct the problems found.

Although MCL 324.41901 and MCL 317.332 are almost identical, there are several substantive differences between the two. The first distinction is the addition of the phrase "In addition to all of the department powers" to the beginning of subsection 1 of MCL 324.41901. The second distinction is the addition of the phrase "In addition, the department may determine and define the boundaries of the areas" to the middle of subsection 1 of MCL 324.41901. The third distinction is changing "the committee" to "the department."

MCL 317.331, also repealed by 1995 PA 57, defined "the committee" for purposes of MCL 317.332. MCL 317.331 provided:

8

(1) A hunting area control committee, composed of a representative of the department of conservation, a representative of the department of state police, *the township supervisor*, or if he declines to serve, a representative selected by *the township board*, and a representative of the sheriff's department of the respective counties involved is established and shall perform such duties as are authorized by this act.

(2) The representatives of the state agencies shall be selected from the staff of each agency by its chief authority and designated as that agency's representative. The committee shall select 1 of its members as chairman and the chairmanship shall be alternated between the agencies each year. The department of conservation shall perform clerical, operational, and administrative duties of the committee in accordance with rules, regulations, procedures and policies promulgated and adopted by the committee and the department of conservation as the agency within which the committee operates. Expenses incurred by individual members in carrying out the intent and purpose of this act shall be borne by the member's department. Costs of surveys and actions requiring services outside the committee and the sheriff's department shall be borne by the department of conservation. [Emphasis added.]

Part 419 does not have a section corresponding to MCL 317.331, the only section in the previous statute that explicitly references townships. As a result, the existing statutory scheme does not impliedly or explicitly restrict the application of part 419 to townships. Rather, part 419 applies to "the governing body of any political subdivision," as explicitly stated in MCL 324.41901.

The majority argues that Rule 299.3048 restricts the application of part 419 exclusively to townships, not cities. Rule 299.3048 provides:

Rule 299.3048 Hunter area control committee.

Rule 48. (1) The hunter area control committee was created by section 1 of Act No. 159 of the Public Acts of 1967. It is composed of a representative of the department of natural resources, a representative of the department of state police, the township

9

supervisor, and a representative of the sheriff's department of the counties involved.

(2) The committee selects a chairman from its members who serves for a year, then alternates with a member from another agency. The department of natural resources performs clerical, operational, and administrative duties of the committee. Expenses incurred are borne by the member's department. Costs of surveys and actions outside the committee and the sheriff's department are borne by the department of natural resources.

(3) In the interest of public safety and the general welfare, the committee may regulate and prohibit hunting and the discharge of firearms and bow and arrow on those areas where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who reasonably can be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in such areas or will impair the general safety and welfare. The committee may determine and define the boundaries. Areas may be closed throughout the year or parts thereof. The committee, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons not inconsistent with law.

The majority argues that under the plain language of Rule 299.3048, the DNR has elected to administer part 419 through the "committee," including the duty to designate hunting areas.

There are several flaws with such an interpretation. First this interpretation of the effect of Rule 299.3048 does not consider the extensive and detailed regulations promulgated by the DNR covering the what, when, where, and how of hunting in Michigan.[14] Further, asserting that Rule 299.3048 allows a "committee" to restrict DNR hunting regulation to townships ignores the express

[14] See the Wildlife Conservation Order, *supra.*

10

mandate in MCL 324.41901 that "the *department* may determine and define the boundaries of the areas" to be hunted upon, not a committee. This phrase was added to the statute during the 1995 amendment, and it signifies the Legislature's intent to empower the DNR, as opposed to the committee, to make all decisions regarding the regulation of hunting. To interpret Rule 299.3048 to vest complete authority to designate hunting areas in a "committee" ignores the vast body of regulations that the DNR has promulgated to designate and define hunting areas, long after Rule 299.3048 was enacted. Such a reading would be contrary to the intent of the Legislature and a plain reading of part 419. Because the DNR has continued to define and designate hunting areas in Michigan, it is inconsistent to conclude that the DNR has elected to vest the power to designate and define hunting areas in a "committee."

The majority supports the applicability of Rule 299.3048 to the current statutory scheme by citing MCL 324.105 and MCL 324.41902(3). MCL 324.105 states:

> When the department or other agency is directed to promulgate rules by this act and rules exist on the date the requirement to promulgate rules takes effect, which rules the department or agency believes *adequately cover the matter*, the department or agency may determine that new rules are not required or may delay the promulgation of new rules until the department or agency considers it advisable. [Emphasis added.]

MCL 324.41902(3) provides that "all rules" promulgated before 1986 are still in effect "unless rescinded pursuant to the administrative procedures act." Although Rule 299.3048 has never been rescinded, the majority's interpretation that Rule

11

299.3048 restricts DNR hunting-area control to "townships" and that the "committee" controls hunting area designations belies basic concepts governing the applicability of administrative rules.

While an administrative agency may make such rules and regulations as are *necessary for the efficient exercise* of its powers expressly granted by the Legislature, the administrative agency cannot *exceed* or *restrict* the statutory authority granted by the Legislature.[15] Rule 299.3048, therefore, is effective only to the extent that it does not exceed or restrict the statutory mandates in part 419. MCL 324.41902(3) keeps Rule 299.3048 effective today, and MCL 324.105 mandates that Rule 299.3048 be read to "adequately cover the matter" discussed in part 419. Neither MCL 324.105 nor MCL 324.41902(3) authorizes the DNR to restrict hunting regulations to townships. Furthermore, part 419 expressly states that DNR authority applies to the governing body of any political subdivision, not just to townships. If Rule 299.3048 is read to mean that the DNR is restricting its control over hunting regulations to townships, the rule would be narrowing the DNR's authority to designate, define, and control hunting areas, as granted by part 419. Such an interpretation allows an impermissible abridgment of the authority that the Legislature granted to the DNR.

Rule 299.3048 (adopted in 1975) is an administrative rule purportedly implementing part 419, and the Wildlife Conservation Order (adopted in 1995,

---

[15] *York*, *supra*; *Coffman*, *supra*.

and last revised on April 17, 2007) is a set of regulations promulgated by the DNR that also administers the provisions of part 419. To read Rule 299.3048 to apply only to townships contravenes principles of administrative law dealing with the interpretation of coexisting administrative regulations. There is a presumption in favor of finding harmony between two administrative regulations dealing with similar subjects.[16] Between two incompatible agency statements, the later one controls over the earlier one.[17] Rule 299.3048 must be read in conjunction with the Wildlife Conservation Order, and when there is a direct conflict between Rule 299.3048 and the Wildlife Conservation Order, the Wildlife Conservation Order should govern because it was adopted after Rule 299.3048. The "committee" created in Rule 299.3048 cannot control hunting-area designations because the Wildlife Conservation Order describes in minute detail hunting areas in Michigan, and the order governs if there is a direct conflict between two regulations. Likewise, Rule 299.3048 cannot limit the application of part 419 to townships because the Wildlife Conservation Order explicitly describes hunting in all of Michigan, and contains no limitation to townships only.

The majority's interpretation that Rule 299.3048 limits the application of part 419 to townships and vests the authority to designate and control hunting

---

[16] *Kearfott Guidance & Navigation Corp v Rumsfeld*, 320 F3d 1369, 1377 (Fed Cir, 2003).

[17] *Timken Co v United States,* 166 F Supp 2d 608, 619 (Ct of Int'l Trade, 2001).

areas in a committee contravenes the plain language of part 419 and belies basic rules of interpretation governing administrative regulations. As a result, I remain convinced that the DNR has the exclusive authority to regulate hunting in Michigan, including the discharge of firearms and bows and arrows for hunting purposes.

## CONCLUSION

The DNR has the exclusive authority to regulate hunting in Michigan, including the discharge of firearms and bows and arrows for hunting purposes. Contrary to the majority's interpretation, the plain language of part 419 explicitly authorizes the DNR to determine and define the boundaries of hunting areas in Michigan. As a result, local governments must follow the procedure outlined in part 419 to adopt additional hunting regulations. The majority's interpretation that Rule 299.3048 limits the application of part 419 to townships and vests the authority to designate and control hunting areas in a committee contravenes the plain language of part 419 and belies basic rules of interpretation governing administrative regulations.

Elizabeth A. Weaver
Marilyn Kelly