# STATE OF MICHIGAN

# COURT OF APPEALS

RAVE'S CONSTRUCTION AND
DEMOLITION, INC., and NORA SHEENA,

UNPUBLISHED
January 7, 2016

Plaintiffs/Counter-Defendants-
Appellees/Cross-Appellants,

v

No. 323908
Oakland Circuit Court
LC No. 2012-129781-CZ

RANDY MERRILL, JAMES MERRILL,
ANGELO PALETTA, CHRISTOPHER
ROTHROCK, and TONY & SONS, INC.,

Defendants/Counter-Plaintiffs-
Appellants/Cross-Appellees.

Before: TALBOT, C.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

After a bench trial, the trial court entered a final judgment in the amount of $84,356.53 plus statutory interest against Randy Merrill (Randy) and James Merrill (James), and in favor of Rave's Construction and Demolition, Inc. (Rave's). The trial court entered a judgment of no cause of action with regard to claims raised by the Merrills against Rave's, as well as with respect to claims raised by Rave's against Angelo Paletta (Paletta), Christopher Rothrock (Rothrock), and Tony & Sons, Inc. The Merrills appeal the trial court's judgment as of right, and Rave's has filed a cross-appeal. We affirm in part, vacate in part, and remand for further proceedings.

## I. FACTS

This case arises out of the Merrills' employment with Rave's. Prior to their employment with Rave's, the Merrills owned their own construction companies. The Merrills completed several large-scale projects for Kroger, generally involving remodeling entire stores. Rave's, itself a construction company, is owned by Nora Sheena (Nora). Its vice president and treasurer is Robert Sowles (Sowles), and Nora's husband, Ramiz Sheena (Ramiz), is Rave's chief financial officer. Before hiring the Merrills, Rave's completed small-scale projects for Kroger. But Kroger did not have confidence that Rave's could complete whole-store remodeling projects, and would not allow Rave's to bid on these larger projects without the Merrills' involvment.

-1-

On January 1, 2010, Rave's hired the Merrills to head a newly-established division, the General Contracting Division. This division's primary purpose was to bid and complete large-scale remodeling projects for Kroger, although the division also bid and completed some small-scale projects. Pursuant to a written employment agreement, the Merrills were to receive a base salary of $65,000. They were also to receive a commission of 1.5% of the gross revenues received by Rave's from Kroger, so long as the Merrills were "a procuring cause" of the contract. Each month, the Merrills also each received $850 in the form of an allowance for health insurance, and an additional $850 as a vehicle allowance.

The Merrills were responsible for tracking the division's profits, and provided monthly profit and loss statements to Rave's. In 2010, the division was profitable, at least according to the Merrills' calculations. In January, 2011, the parties agreed to share the division's profits, with half going to the Merrills and the other half to Rave's. Randy provided a proposal to Rave's. Using the division's year-end profit and loss statement as a starting point, Randy determined that he and James were each entitled to an additional $26,629.63. Rave's accepted this determination. However, rather than pay this amount in a lump sum, Rave's divided it into equal weekly payments, which were added to the Merrills' weekly paychecks throughout 2011.

The parties' arrangement broke down in 2012, after the Merrills refused Rave's request that they invest their commissions in the company. On April 6, 2012, the parties entered into an agreement, titled "Employment Agreement." Under this agreement, the Merrills' responsibilities were described as the "[c]ompletion of all general contracting work, through receipt of final payment for Kroger store #622." The Merrills were to receive their base salary through June 9, 2012, and health and vehicle allowances in May and June, 2012.[1] The Merrills were also to receive additional compensation in the form of commissions and a share of the General Contracting Division's monetary assets after its debts were paid.

Much of the instant dispute centers on the profit-sharing arrangement reached in 2011 and the Merrills' entitlement to additional compensation under the April 6, 2012 agreement. After a bench trial, the trial court concluded that the Merrills had failed to include certain expenses when calculating the General Contracting Division's profits. It added the expenses it found were not included and then awarded half of this amount to Rave's. Relying on a restriction contained in the January 1, 2010 employment agreement, the trial court concluded that the Merrills were not entitled to any additional commissions or profits beyond those already received.

The trial court also concluded that the Merrills had failed to timely return certain documents and records to Rave's, and that the delay in providing these documents and records caused $1,500 in damages to Rave's. The trial court found that the Merrills had wrongfully retained certain laptop computers that were purchased by Rave's for the Merrills' use, and awarded $2,220 in damages to compensate Rave's for these computers. The trial court rejected

---

[1] At the time of this agreement, three projects were in various stages of completion. Store 622 was the farthest from completion. According to Randy, June 9, 2012 was selected because this was the date this store was scheduled to be completed.

the remaining claims raised by the parties.  The Merrills appeal from this judgment, and Rave's has filed a cross-appeal.

## II.  COUNT V OF RAVE'S AMENDED COMPLAINT[2]

Both parties contest the trial court's conclusion with regard to Count V of the complaint. In this count, Rave's asserted that the Merrills failed to include certain expenses when calculating the General Contracting Division's profits, and thus, overstated the division's profits. We agree that the trial court clearly erred with regard to this count.  We vacate the trial court's decision with regard to Count V of the amended complaint and remand for further proceedings.

"Following a bench trial, we review for clear error the trial court's factual findings and review de novo its conclusions of law."[3]   "This Court [also] reviews the trial court's determination of damages following a bench trial for clear error."[4]   "[F]actual findings are clearly erroneous where there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake."[5]  We review de novo "questions involving the proper interpretation of a contract or the legal effect of a contractual clause . . . ."[6]

## A.  THE MERRILLS' ARGUMENTS

In their appeal, the Merrills raise five individual reasons why they believe the trial court erred with respect to this count.  First, the Merrills argue that because the January 1, 2010 agreement contains an integration clause, the parol evidence rule bars this Court from looking beyond the terms of this agreement.  The January 1, 2010 employment agreement contains an integration clause, and no party contests the validity of this clause.[7]  It is well-established in our jurisprudence that a "valid integration clause nullifie[s] all *prior and contemporaneous*

---

[2] The Merrills briefly argue that the trial court abused its discretion by failing to allow them to file an answer to Rave's motion for reconsideration.  No such issue is raised in the Merrills' statement of the questions presented.  As such, we will not address the question.  See *Bouverette v Westinghouse Elec Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001) ("Independent issues not raised in the statement of questions presented are not properly presented for appellate review.").

[3] *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007).

[4] *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003).

[5] *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

[6] *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

[7] The agreement states, "[t]his Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof.  All prior correspondence and proposals . . . are merged herein and superseded hereby."

agreements, understandings, representations, and warranties . . . .["8] It is equally well-established that evidence of subsequent agreements is *not* barred by the parol evidence rule.[9] This is because "the parties possess, and never cease to possess, the freedom to contract even after the original contract has been executed."[10] Thus, while agreements reached prior to or contemporaneously with the January 1, 2010 agreement were nullified, this Court is not prohibited in any way from considering the effect of agreements reached by the parties after January 1, 2010. And as the trial court found, the agreement at issue was reached in January, 2011.[11]

Second, the Merrills contend that the additional sums they received in 2011 were wages, and thus, are not refundable under the Michigan Payment of Wages and Fringe Benefits Act.[12] We find no merit to this argument. The statute relied upon by the Merrills, MCL 408.477, regulates when and under what conditions an employer may make deductions from wages paid in an employee's regular paycheck.[13] Through its lawsuit, Rave's did not seek to make a deduction from a regular paycheck. Rave's sought to recover an amount it believed it wrongfully paid to the Merrills because, according to Rave's, the Merrills misrepresented the true financial state of the General Contracting Division. The statute is of no relevance to this matter.

Third, the Merrills argue that because Rave's voluntarily approved the additional compensation received by the Merrills in 2011, Rave's cannot now recover those payments. The Merrills rely on *Montgomery Ward & Co v Williams*, where our Supreme Court stated:

---

[8] *Hamade v Sunoco Inc (R & M)*, 271 Mich App 145, 171; 721 NW2d 233 (2006) (emphasis supplied). See also *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 499; 579 NW2d 411 (1998) ("[A]n integration clause nullifies all antecedent agreements.").

[9] See *Michigan Nat'l Bank of Detroit v Holland-Dozier-Holland Sound Studios*, 73 Mich App 12, 14; 250 NW2d 532 (1976) ("[W]e must . . . disabuse the lower court of the notion that the parol evidence rule will bar proof of oral modifications occurring after the parties have reduced their obligations to writing. The swath of the parol evidence rule is not so broad as to prevent a showing of subsequent oral modifications.").

[10] *Quality Prods and Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372; 666 NW2d 251 (2003).

[11] Specifically, the trial court found that "[i]n January 2011 the parties agreed that the Merrills would receive additional compensation for their work, i.e., a portion of the profits realized from the General Contracting Division in 2010 . . . ." The Merrills do not contest this finding.

[12] MCL 408.471 *et seq*.

[13] The specific provision relied on by the Merrills, MCL 408.477(4), provides:

> Within 6 months after making an overpayment of wages or fringe benefits that are paid directly to an employee, an employer may deduct the overpayment *from the employee's regularly scheduled wage payment* without the written consent of the employee if all of the following conditions are met:" (emphasis supplied).

"It is well settled that a voluntary payment cannot be recovered back, but a voluntary payment is one made with full knowledge of all the circumstances upon which it is demanded, and without artifice, fraud, or deception on the part of the payer, or duress of the person, or goods of the person making the payment."[14]

The trial court concluded that because the Merrills had incorrectly reported the General Contracting Division's profits to Rave's, Rave's lacked full knowledge of all the relevant circumstances, and thus, Rave's payments could not be considered voluntary under *Montgomery Ward & Co*. The Merrills contend that because Rave's had the necessary information to perform its own profit calculation, and thus, discover any discrepancies, it cannot now claim that it was defrauded or deceived into making these payments. It is true that in *Montgomery Ward & Co*, the Court held that "fraud is not perpetrated upon one who has full knowledge to the contrary of a representation."[15] But as our Supreme Court has recently explained, it is unnecessary for a party "to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud."[16] Moreover, our Supreme Court also recognized in *Montgomery Ward & Co* that "a payment, although voluntarily made, if made under a mistake of a material fact, may be recovered, even if the mistake be due to a lack of investigation."[17] Thus, regardless of whether Rave's had the means to discover that the Merrills' accounting of the division was erroneous, *Montgomery Ward & Co* presents no bar to Rave's recovery in this matter.

The Merrills' fourth contention is that the trial court erred by including in its calculation of damages expenses not attributable to the year 2010. In this regard, we agree that the trial court clearly erred. The trial court found that the agreement between the parties was to share the *2010* profits of the General Contracting Division.[18] Both before and after trial, the parties similarly couched the issue as pertaining only to the division's 2010 profits. And even at the present stage of the proceedings, Rave's states, "Rave's is contending that the profit *for 2010*,

---

[14] *Montgomery Ward & Co v Williams*, 330 Mich 275, 284-285; 47 NW2d 607 (1951), quoting *Pingree v Mutual Gas Co*, 107 Mich 156, 157; 65 NW 6 (1895).

[15] *Id*. at 284.

[16] *Titan Ins Co v Hyten*, 491 Mich 547, 557; 817 NW2d 562 (2012).

[17] *Montgomery Ward & Co*, 330 Mich at 284.

[18] Specifically, the trial court found that "[i]n January[,] 2011[,] the parties agreed that the Merrills would receive additional compensation for their work, i.e., a portion of *the profits realized from the General Contracting Division in 2010*, to be paid out weekly throughout 2011." When describing the count of the complaint at issue, the court explained that "[t]his count is based on the parties' agreement that the Merrills would receive 50% *of the 2010 profits* from the General Contracting Division, and the manner in which the Merrills calculated that amount . . . ."

not 2011[,] was overstated . . . ."[19] Thus, the pertinent issue is whether the Merrills failed to take into account certain expenses when calculating the General Contracting Division's profits *for the year 2010.*

But when it calculated the damages owed to Rave's, the trial court accepted the determinations stated in Exhibit 32.[20] This exhibit, prepared by Nora, was an accounting of the division's finances over its entire existence. It included expenses incurred[21] both before and after 2010.[22] Including expenses from years other than 2010 cannot be reconciled with Rave's description of its claim or with trial court's conclusion that the count at issue "was based on the parties' agreement that the Merrills would receive 50% *of the 2010 profits* from the General Contracting Division . . . ." Indeed, by relying on this exhibit, the trial court eventually awarded over $80,000 in damages to Rave's on this count of the complaint, even though Rave's had only paid the Merrills approximately $53,000 under the agreement at issue. The award is clearly erroneous.

On reconsideration, the trial court rejected this challenge to its calculations, stating that "the parties' agreement clearly called for the sharing of expenses whenever they were incurred." This conclusion was in error. The agreement, as found by the trial court, was not one contemplating the sharing of profits or expenses over the entire course of the parties' relationship. It was simply an agreement that the Merrills would receive a portion of the division's 2010 profits. Indeed, our review of the record established in the trial court does not disclose a single agreement to share expenses.[23] Accordingly, we vacate the trial court's award of damages on Count V of the complaint and remand for further proceedings. Before it may award damages on this count, the trial court must determine what expenses are attributable to the year 2010, and then, whether these expenses were omitted by the Merrills when calculating the division's 2010 profits.

---

[19] Rave's similarly states in its cross-appeal that the parties had an agreement for the "split of profit realized from the General Contracting Division . . . which agreement was made in January, 2011 for the profit realized for the calendar year 2010."

[20] Nora testified that her approach to preparing this exhibit was to show "the actual bank balance in the bank as of September 1, 2012. The G[eneral Contracting] bank account."

[21] The Merrills utilized an accrual method of accounting, as opposed to a cash-basis accounting method. The accrual method is "[a]n accounting method that records entries of debits and credits when the revenue or liability arises, rather than when the income is received or an expense paid." Black's Law Dictionary (10th ed), p 24.

[22] As examples, Nora included "supervision fees" incurred in 2012 and 2013, payroll processing fees for "January 2010 thr[ough] last checks paid in June 2012," payroll taxes for 2010, 2011, and 2012, legal fees incurred in 2008 and 2009, and insurance expenses for 2011 and 2012.

[23] Of course, those expenses attributable to the year 2010 would be shared by the parties, as those expenses form a necessary component of the profit calculation. But there exists no evidence of an agreement that required the Merrills to bear a portion of losses if the General Contracting Division was not profitable, whether in 2010 or in any other year.

-6-

The Merrills raise a fifth contention of error, arguing that certain amounts awarded by the trial court represent items that were not actually expenses of the General Contracting Division. For example, the Merrills argue that what the trial court described as automobile and insurance expenses for Ramiz and Sowles should not be the responsibility of the division. The Merrills assert that these "expenses" actually represented a profit distribution to Ramiz and Sowles. The Merrills argue that the loans addressed in the trial court's award were not actually loans, but represented the capital used to fund the work done by the division. The Merrills argue that payroll taxes were, in fact, accounted for in Randy's calculations. They also argue that they never agreed to pay attorney fees, and that in any case, many of these fees were unrelated to the division.

While the trial court found that these amounts were not included in Randy's calculations, it did not specifically address a more fundamental question – whether these amounts *should* have been included in Randy's calculations as expenses. And ultimately, it appears that this question is the one truly disputed by the parties. Given that we must vacate the trial court's decision with respect to this count, the parties may address the issue in the trial court on remand. Nor is this Court the correct forum to resolve disputed factual questions such as these. Rather, such factual determinations, many of which would seem to turn on a determination of credibility, are properly left to the finder of fact.[24]

## B. RAVE'S ARGUMENTS

Rave's contends that the trial court clearly erred by failing to include insurance expenses when it calculated damages owed to Rave's under Count V of its amended complaint. The trial court found that these expenses had not been presented to the Merrills, and thus, were not improperly omitted when the Merrills calculated the General Contracting Division's profits. Relying on certain communications and invoices, Rave's contends that these expenses were, in fact, presented to the Merrills. Rave's also contends that whether the Merrills were aware of these expenses is irrelevant because pursuant to the April 6, 2012 agreement, the parties agreed that these expenses would be paid before any of the division's monetary assets were distributed. Because we must vacate the trial court's decision with respect to this count of the amended complaint, we decline to address this issue. The trial court may revisit the question of whether the Merrills should have included insurance expenses in their calculation of the division's 2010 profit on remand.

## III. COUNT I OF THE AMENDED COMPLAINT

The Merrills argue that the trial court erred with respect to Count I of Rave's amended complaint. The trial court concluded that the Merrills were responsible for damages in the amount of $3,720, representing $1,500 in expenses for Rave's to reproduce documents the

---

[24] "The question of credibility is generally for the fact-finder to decide." *Taylor v Mobley*, 279 Mich App 309, 314 n 5; 760 NW2d 234 (2008). To facilitate any potential further appellate review, we encourage the trial court to provide clear and specific findings in this regard.

Merrills refused to provide, and $2,220 for three computers purchased by Rave's but retained by the Merrills. We find no clear error in the trial court's decision with regard to this count.

Rave's complaint alleged that the Merrills retained several boxes of documents, including contracts, invoices, and other information, after their employment was terminated. Sowles testified that as a result, he spent 200 hours reconstructing these records. Rave's sought $15,000 in damages, representing a rate of $75 an hour for this work. In response to a motion, the trial court ordered the Merrills to turn over the documents at issue, and the Merrills complied. The trial court concluded:

> The Court finds that Rave[']s is entitled to recover for these expenses, but not to the extent sought. Specifically, the evidence indicates that Rave[']s need for immediate reproduction of the documents related only to the jobs that were still outstanding at the time Rave[']s terminated the Merrills. This represents approximately ten percent of the documents at issue. Thus, Rave[']s is entitled to recover only that portion of its claim, i.e, $1,500 . . . .

The Merrills first argue that this award was improper because the Merrills did provide the requested records to Rave's. The Merrills' argument does not address the basis of the trial court's decision. The trial court did not award damages because the documents were never provided; it did so on the basis that the delay in providing the documents caused harm to Rave's. Because the Merrills' argument fails to address the basis of the trial court's decision, this Court need not even consider granting relief.[25]

In their reply brief, the Merrills assert that Rave's produced no "credible evidence" of damages, pointing out that Sowles did not produce any records to substantiate the number of hours he claimed to have spent reproducing the documents. This argument simply disputes the trial court's finding that Sowles's testimony was credible, and is no basis for reversing the trial court's decision.[26]

The Merrills also argue that Rave's failed to mitigate its damages because it could have allowed the Merrills to remain employed and to finish the projects that were not yet complete. "Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing."[27] "Specifically, when one has committed a legal wrong against another, the latter has an obligation to use reasonable means under the circumstances to avoid or minimize his or her damages and cannot recover for damages that could thus have been avoided."[28] It is

---

[25] *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

[26] See *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (under the clear error standard of review, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."); *Taylor*, 279 Mich App at 314 n 5 ("The question of credibility is generally for the fact-finder to decide.").

[27] *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 538; 854 NW2d 152 (2014).

[28] *Id*.

clear from the record that the parties' relationship deteriorated to a point of being unworkable. Randy testified at trial that the parties' relationship had become adversarial. Indeed, before they were terminated, the Merrills refused to provide the records requested by Raves, demanded payment of commissions, and threatened legal action if a compromise could not be reached. Under the circumstances, we decline to hold that continuing the Merrills' employment would have been a reasonable means to avoid the damages found by the trial court.

The Merrills also make cursory arguments regarding the laptop computers, with no citation to authority supporting their arguments. By failing to support their position with any legal authority, the Merrills have abandoned their arguments.[29] Nor do the arguments have any merit. The Merrills suggest that the trial court should not have considered any award of damages with respect to the computers because the computers were not specifically mentioned in the complaint. However, in a joint final pretrial statement signed by the Merrills' counsel, the Merrills acknowledged that one of Rave's claims was "[w]hether [d]efendants, [the] Merrills[,] have retained computers owned by Rave's and refuse to return the same to Rave's." "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court."[30] The Merrills also state that Rave's was not entitled to recover damages because the computers were purchased to replace computers owned by the Merrills. The trial court found the contrary, concluding that the parties did not intend for the Merrills to retain these computers. As this factual determination turned on a credibility determination, we find no clear error.[31] Accordingly, we affirm the trial court's award of damages with respect to Count I of the complaint.

IV. THE MERRILLS' CROSS-CLAIMS

The Merrills contend that the trial court erred when it found that the Merrills were not entitled to recover any amount under the April 6, 2012 agreement. They also argue that the trial court erred by finding no cause of action with regard to their claim of conversion. While we find no error with regard to claim of conversion, we agree that the trial court erred with respect to the Merrills' claims arising from the April 6, 2012 agreement.

In the trial court, the Merrills claimed that Rave's failed to pay all of the commissions and other sums due to them under the April 6, 2012 agreement. Relying on a portion of the January 1, 2010 agreement, the trial court found the Merrills were not entitled to recover any amount from Rave's. The January 1, 2010 employment agreement provided:

> Employee shall be eligible for a commission, over and above his Base Salary, if he is a procuring cause of any general contracting work obtained by [Rave's] for

---

[29] *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996) ("A party may not leave it to this Court to search for authority to sustain or reject its position.").

[30] *Czymbor's Timber, Inc v Saginaw*, 269 Mich App 551, 556; 711 NW2d 442 (2006) (quotation marks and citation omitted).

[31] See *Miller*, 433 Mich at, 337; *Taylor*, 279 Mich App at 314 n 5.

The Kroger Company. In the event Employee is a procuring cause of a general contracting contract obtained by [Rave's] for The Kroger Company, Company shall pay the employee a commission equal to 1.5% of the gross revenues received by [Rave's] from The Kroger Company on that contract. The timing of [Rave's] payment to Employee of the commission, in whole or periodically, shall be at [Rave's] sole discretion but in no event shall Employee receive the balance of the commission owed any later than thirty (30) days subsequent to the Company's receipt of final payment from The Kroger Company. *Employee shall forfeit any commission to which it was otherwise entitled if he is not employed with [Rave's] at the time [Rave's] would be making the commission payment.*

The trial court concluded that this final sentence was "fully enforceable . . . and that it bars the Merrills' claims . . . ." The trial court's analysis does not, however, specifically address the fact that on April 6, 2012, the parties entered into a different agreement pertaining to Merrills' compensation. This document stated that the Merrills would each receive their base salary, insurance and automobile allowances, and:

**ADDITIONAL COMPENSATION**: 3% of the gross revenues (1.5% each to Randy Merrill and Jim Merrill) from Kroger on all general contracting jobs with the exception of store #622. When final payment is received from all Kroger general contracting jobs including store #622, all money owed to Rave's Construction from the general contracting division will be paid first, including but not limited to taxes and insurance liabilities. Whatever money is left will be divided equally (25% each to Randy Merrill and Jim Merrill).

"[T]he freedom to contract . . . permits parties to enter into new contracts or modify their existing agreements."[32] And if a "later contract covers the same subject matter as the earlier contract and contains terms that are inconsistent with the terms of the earlier contract, the later contract may supersede the earlier contract, unless it appears that this is not what the parties intended."[33] The April 6, 2012 agreement explicitly refers to the Merrills' compensation, and even more specifically, commissions. Thus, it clearly covers the same subject matter as contained in the January 1, 2010 agreement. And while some of its terms are consistent with the January 1, 2010 agreement, many are not. Most significantly, the April 6, 2012 agreement contains no language conditioning the Merrills' entitlement to commissions on their employment status. The April 6, 2012 agreement also contains a provision for the sharing of the division's monetary assets, a provision that did not exist in the January 1, 2010 agreement.

Nor does it appear that the parties intended for the Merrills' entitlement to commissions to remain conditioned on the Merrills' continued employment. Rather than being titled as an

---

[32] *Quality Prods and Concepts Co*, 469 Mich at 370-371. See also *Grosse Pointe Park v Mich Municipal Liability and Prop Pool*, 473 Mich 188, 219-220; 702 NW2d 106 (2005) ("[C]ontracting parties are always entitled mutually to modify the underlying contract . . . .").

[33] *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 414 n 16; 646 NW2d 170 (2002).

amendment to the prior agreement, as the parties had done with a document executed just a month before, the parties titled the April 6, 2012 agreement as an "Employment Agreement." The agreement contains no references to the former agreement. By relying on the terms of the January 1, 2010 agreement, the trial court essentially rewrote the April 6, 2012 agreement to create a condition that the parties had omitted. "Clear, unambiguous, and definite contract language must be enforced as written and courts may not write a different contract for the parties . . . ."[34] Under the April 6, 2012 agreement, the Merrills' entitlement to commissions was not conditioned on their continued employment with Rave's, and the trial court erred by holding to the contrary.[35]

However, the question remains: precisely what amount in commissions are the Merrills entitled to receive? The April 6, 2012 agreement states that the Merrills are entitled to a commission "from all Kroger general contracting jobs with the exception of store #622." Thus, it is clear that the Merrills are not entitled to a commission for the project at store 622. But the contract does not define the term "Kroger general contracting job." Given the circumstances leading to the April 6, 2012 agreement, it may well be that the parties meant to refer only to the three projects that were underway at the time. But the language could also be read as referring to any and all general contracting jobs undertaken by Rave's for Kroger, a definition that, for obvious reasons, is preferred by the Merrills. The Merrills also now seek commissions on the smaller, "minor capital" projects, all but one of which were completed prior to April 6, 2012. The Merrills did not seek commissions on these projects until after signing the April 6, 2012 agreement, even though the prior agreement used similar language, "any general contracting work obtained by [Rave's] for" Kroger. "Where the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact."[36] Because the issue is a factual one that has yet to be addressed, we remand the matter to the trial court to determine what commissions the Merrills are entitled to receive under the April 6, 2012 agreement.

The Merrills also contend that the trial court erred when it failed to award damages the Merrills believe they are entitled to receive pursuant to the language of the April 6, 2012 agreement concerning the distribution of the division's monetary assets. The trial court did not

---

[34] *Wausau Underwriters Ins Co v Ajax Paving Indus, Inc*, 256 Mich App 646, 650; 671 NW2d 539 (2003).

[35] The Merrills also argue that the trial court erred by finding no cause of action with respect to Count IV of their counterclaim, which alleged that Rave's breached an implied covenant of good faith and fair dealing by terminating their employment in an effort to avoid paying the commissions. While the issue is irrelevant in light of our conclusion that the Merrills' entitlement to commissions was no longer conditioned upon their employment status, we note that "this Court has refused to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the employment context." *Barber v SMH (US), Inc*, 202 Mich App 366, 373; 509 NW2d 791 (1993).

[36] *Port Huron Educ Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996).

separately address this claim. It would seem that the trial court concluded that any sums potentially due under this language were also subsumed within the forfeiture clause of the January 1, 2010 agreement. As discussed, that clause was of no effect after the parties signed the April 6, 2012 agreement.[37] However, the amount of damages due on this claim depends on a determination of the amount of money left in the General Contracting Division, if any, after its debts are paid. The parties submitted conflicting evidence on this point, and the conflict was not resolved by the trial court. Thus, the trial court must determine what additional sums, if any, are due to the Merrills under this provision of the April 6, 2012 agreement.

We find no error, however, in the trial court's determination that the Merrills had not proven their claim of conversion. "Common law conversion . . . consists of any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein."[38] The Merrills claimed that Rave's committed the tort of conversion by retaining certain equipment and furniture after their employment ended. The trial court concluded that the Merrills failed to satisfy the elements of this claim because the Merrills had not sought the return of this property from Rave's. On appeal, the Merrills do not address the trial court's reasoning. Because the Merrills do not address the basis of the trial court's decision, this Court need not consider granting any relief with regard to this claim.[39] Nor does the evidentiary record support the Merrills' claim of conversion. It is undisputed that the Merrills voluntarily brought these items to the office space established for them when they began working for Rave's. There is no evidence that the Merrills were ever denied the return of these items. Rather, as Randy testified, the Merrills never asked for the items to be returned, nor did they attempt to retrieve them.[40] The record contains no evidence of "any distinct act of domain wrongfully exerted [by Rave's] over [the Merrills'] personal property in denial of or inconsistent with the rights therein."[41]

### V. COUNTS IX AND X OF RAVE'S AMENDED COMPLAINT

Rave's contends that the trial court erred when it dismissed its claims against Paletta and Rothrock. These counts sought damages for violations of noncompetition provisions contained within the employment agreements between Rave's and these two individuals. We find no error with respect to these counts.

---

[37] Moreover, even if we were to find that the forfeiture language of the January 1, 2010 agreement survived the April 6, 2012 agreement, that language clearly applies only to the 1.5% commissions that the Merrills were entitled to receive. It would have no effect whatsoever on the portion of the April 6, 2012 agreement regarding a division of the sums remaining in the General Contracting Division after its debts were paid.

[38] *Dep't of Agriculture v Appletree Marketing, LLC*, 485 Mich 1, 13-14; 779 NW2d 237 (2010) (quotation omitted).

[39] *Derderian* 263 Mich App at 381.

[40] Randy testified that "[d]ue to the adversarial environment, we just left them in the office."

[41] *Dep't of Agriculture*, 485 Mich at 13-14 (quotation omitted).

Paletta and Rothrock were hired by Rave's in 2011 and worked for the General Contracting Division. Rave's laid off the two in 2012. Shortly after, the Merrills, Paletta, and Rothrock began working for Paletta's company, Tony & Sons, Inc. This company bid on and was awarded several Kroger projects. In the trial court, Rave's contended that it was entitled to approximately $86,000 from each individual based on "the profit realized by the Merrills," Paletta, and Rothrock as a result of their work for Kroger.[42] The trial court found no cause of action with regard to these counts because even assuming Paletta and Rothrock breached the covenants, Rave's had not proven that the damages they claimed were the result of the breaches alleged. The trial court concluded that the reason Rave's was not awarded these projects "was attributable solely to its dissociation of itself from the Merrills, and not to these defendants' failure to continue working for Rave[']s."

"The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach."[43] Rave's argues that Paletta and Rothrock benefitted from their alleged breaches of their employment agreements. Rave's does not, however, explain how Paletta's and Rothrock's alleged breaches caused it to lose these same profits. And more specifically, Rave's fails to contest the trial court's finding that the reason Rave's did not procure the contracts awarded to Tony & Sons, Inc. was because without the Merrills, Kroger would not hire Rave's. Rave's has not demonstrated that this conclusion was clearly erroneous.

Rave's also argues that, at a minimum, it is entitled to nominal damages with respect to this claim. Rave's did not seek nominal damages at any stage of the trial court proceedings. Because the issue was not raised in the trial court, we consider it waived.[44]

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

[42] On appeal, Rave's now argues for damages of approximately $29,000, the amount Paletta earned from these projects.

[43] *Alan Custom Homes, Inc*, 256 Mich App at 512.

[44] See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (although appellate courts may consider issues not raised in the trial court in order to prevent a miscarriage of justice, generally, the failure to raise an issue in the trial court waives appellate review of the issue).