*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MOHAMED GHASSAM BAYRAM,

Defendant-Appellant.

UNPUBLISHED
April 30, 2020

No. 345296
Wayne Circuit Court
LC No. 18-000922-01-FH

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of third-degree criminal sexual conduct, MCL 750.520d(1)(b) (sexual penetration by use of force or coercion). The trial court sentenced defendant to 95 to 180 months' imprisonment for each conviction, to be served concurrently. We affirm defendant's convictions, reverse the trial court's scoring of offense variable (OV) 19, and remand for resentencing. This appeal is being decided without oral argument under MCR 7.214(E)(1).

The jury found defendant guilty of sexually assaulting 16-year-old AW. On the day of the incident, AW and defendant met at a gym. The two then agreed to go out to dinner. Defendant drove AW to the restaurant in his car. After dinner, AW indicated that she wanted to return to the gym to get her car, but defendant drove in a different direction. According to AW, defendant forced her to perform oral sex on him while he drove. Defendant then drove to Hines Park, where he then forced AW to engage in anal sex with him. Afterward, defendant brought AW back to the gym parking lot. Defendant did not dispute engaging in sexual activity with AW, but he maintained that the activity was consensual.

## I. VOUCHING FOR VICTIM'S CREDIBILITY

Defendant argues that he is entitled to a new trial because one of the prosecution's expert witnesses impermissibly vouched for the credibility of the complainant. Because defendant did not object to the challenged testimony in the trial court, this issue is unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Therefore, we review this issue for plain error affecting defendant's substantial rights. *People v Jones*, 468 Mich 345,

-1-

355; 662 NW2d 376 (2003). To prevail, defendant must show that an error occurred, the error was plain or obvious, and the plain error affected the outcome of the proceeding. *Id.*

"It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Likewise, "[a]n expert may not vouch for the veracity of a victim." *Id.* There is a particular concern with experts because such vouching "place[s] an impermissible stamp of scientific legitimacy to the truth of [a complainant's] story." *People v Matlock*, 153 Mich App 171, 179; 395 NW2d 274 (1986).

At trial, the prosecution called Melanie Morse, a forensic scientist who worked for the Michigan State Police. Morse received evidence collected from the police, performed an initial screening, and sent out portions of it for DNA testing. Defendant takes issue with a portion of her testimony, where she stated, "and in this case there was only an indication of one suspect and no consensual." Viewed in context, it is evident that Morse was not giving an opinion, personal or scientific, that there was no consent between AW and defendant. Morse was asked why only one particular swab was sent for further DNA testing while other items were not. In her complete answer, Morse stated:

> *We look at maybe* [sic] *allegations of the case*, how many contributors do we expect. We typically will send forward one sample if there's one suspect, no consensual. If there's multiple parties that could be there, such as two suspects and a consensual or one suspect and one consensual[,] we'll send two samples forward[,] and *in this case there was only an indication* of one suspect and no consensual so only one sample was sent forward. [Emphasis added.]

Morse prefaced her comments by explaining that she looks at the "allegations of the case" to see how many DNA contributors she would expect to find. Then, depending on what those *allegations* are, she will send either one or two samples forward. Her comment that "in this case there was only an indication of one suspect and no consensual" was not a statement of her opinion regarding whether there was consent. Instead, her statement that there was "an indication" related back to her statement that she first looks at the allegations of the case. The statement was offered to show why she had sent only one sample forward for further testing.[1] Accordingly, defendant cannot show that there was any plain error in the admission of Morse's earlier statement.

## II. ADMISSION OF TEXT MESSAGES

Defendant also argues that the trial court erred when it admitted the entirety of a text message exchange between AW and her friend, KN. Defendant contends that the trial court erred by failing to analyze the messages on a message-by-message basis to determine whether each message was admissible. We conclude that defendant waived any claim of error in this regard at the trial court, and therefore, cannot seek any relief.

---

[1] In fact, defendant's argument is undercut by Morse's testimony on cross-examination where she admitted that her testing is not able to determine whether a sexual act was consensual.

AW had been communicating with KN through their cell phones, with most of their communication occurring through text messaging. The two communicated before AW left with defendant, while AW was with defendant, and after defendant returned AW to the gym parking lot.

Defendant moved in the trial court to preclude the admission of all the text messages between AW and KN. Defendant's sole argument was that the messages were inadmissible under MRE 403. At the motion hearing, the trial court also questioned whether the messages were inadmissible hearsay. See MRE 801(c); MRE 802. The prosecutor averred that the messages written by AW were admissible under the hearsay exception for present sense impressions, MRE 803(1). The prosecutor also asserted that KN's messages were not hearsay because they were only being offered to provide context for AW's statements, and not to prove the truth of the matters asserted by KN in the messages. See MRE 801(c) (defining "hearsay" as an out-of-court statement "offered in evidence to prove the truth of the matter asserted"). The trial court agreed that AW's text messages were admissible as present sense impressions, and also noted that they were admissible as excited utterances under MRE 803(2). Finally, the court ruled that the probative value of the messages was not substantially outweighed by the danger of unfair prejudice. Notably, at one point during the April 3, 2018 motion hearing, the prosecutor offered not to introduce one of AW's text messages, where AW simply stated to KN the words, "sex trafficking." The prosecutor implicitly agreed that this reference could be considered unduly prejudicial because there was no evidence to show that defendant was involved with sex trafficking.

At a subsequent hearing, however, the prosecutor sought clarification of the trial court's previous ruling denying defendant's motion in limine. The prosecutor wanted to confirm whether the trial court expressly ruled with respect to the "sex trafficking" message. The prosecutor then indicated that when she spoke with defense counsel previously, counsel either wanted all of the messages included, or none of them. Defense counsel again stated that he did not want any of the text messages admitted, but agreed that if the court was going to allow some messages, then all of the messages, including the "sex trafficking" message, should be introduced. Citing MRE 106, the trial court agreed to admit all of the messages.

Because defendant took an "all or nothing" approach to the admission of the text messages in the trial court, he cannot now argue that the trial court erred by failing to individually examine the admissibility of each text message or by admitting "some" messages, which defendant claims constituted hearsay within hearsay.[2] "A party may not take a position in the trial court and

---

[2] Moreover, the two statements defendant takes issue with—"I was saying no" and "[I] told him to take me home"—do not contain hearsay within hearsay. While there are two aspects or layers of each statement, there are not two layers of hearsay. For the "I was saying no" text, there is the "no" portion that AW actually said in the car while with defendant. Then there is the portion where AW recounts that statement in her text message to KN. AW saying "no" in the car is not hearsay. Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). A "statement" is defined "as oral or written assertion," or "nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). Thus, for there to be hearsay, there must

-3-

subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court." *Czymbor's Timber, Inc v Saginaw*, 269 Mich App 551, 556; 711 NW2d 442 (2006), aff'd 478 Mich 348 (2007) (quotation marks and citation omitted). Defendant's argument accepts that other messages were properly admitted into evidence, and because defendant specifically requested that *all* messages be admitted if *any* were to be admitted, defendant cannot seek redress on appeal. See *id*.

## III. RIGHT TO PRESENT A DEFENSE

Defendant next argues that he was denied his right to present a defense when the trial court excluded his expert, Dr. Gerald Shiener.

Although the issue regarding the admissibility of Dr. Shiener's testimony was raised and decided in the trial court, defendant never claimed that his right to present a defense was being denied by the exclusion of his testimony. Therefore, the constitutional issue that defendant raises on appeal is not preserved. See *Metamora Water Serv*, 276 Mich App at 382. This issue is therefore also reviewed for plain error affecting substantial rights. *Jones*, 468 Mich at 355.

Before trial, the defense provided a copy of a report by Dr. Shiener, a psychiatrist. In his report, Dr. Shiener concluded that because AW had been diagnosed with depression and anxiety, had been prescribed certain medication, and had been the victim of prior sexual assaults,[3] AW's "memory, judgement, impulse control, and ability to maintain socially appropriate interactions" would have been significantly impacted. Dr. Shiener further stated that AW "would have a significant impairment in her ability to undergo and experience and reliably report her emotions and the details of that experience in a manner that was untouched by emotion and uncontaminated by the distortions caused by the strong feelings brought to bear during periods of sexual arousal."

---

be an underlying "statement," which includes an assertion. Saying "no" is not an assertion under the hearsay rules because it is not an assertion of a fact that is "[]capable of being true or false." *People v Jones*, 228 Mich App 191, 204; 579 NW2d 82 (1998), mod in part on other grounds 458 Mich 862 (1998). The same applies to the other portion of the text, where AW wrote to KN, "[I] told him to take me home." Commands are not assertions of fact. *People v Bennett*, 290 Mich App 465, 483; 802 NW2d 627 (2010). Therefore, the underlying aspect of each communication was not hearsay, leaving only one layer of hearsay.

Furthermore, considering the timing of the challenged messages in relation to the events described, and the indications that AW was crying, unable to breathe, and thought she was going to pass out at the time she composed the messages, we are not persuaded that the trial court abused its discretion by determining that AW's messages to KN were admissible as a present sense impression under MRE 803(1), or an excited utterance under MRE 803(2). Moreover, because KN's messages to AW were offered only to provide context for AW's messages, and were not offered to prove the truth of the matters asserted in KN's messages to AW, KN's messages were not inadmissible hearsay.

[3] Dr. Shiener noted that it had been reported that AW was the victim of childhood sexual abuse in the fourth grade and the seventh grade.

The prosecution moved to have the testimony barred as not complying with the requirements of MRE 702.

The trial court granted the prosecution's motion, and precluded the admission of Dr. Shiener's testimony. The court stated, "There's really nothing that's been presented to the Court for it to know whether or not the proposed testimony . . . is based on sufficient facts or data or that it is the product of reliable principles and method or that [Dr. Shiener has] applied the principles and methods reliably to the facts of the case. There's no citation for where [Dr.] Shiener draws his opinions from." The court further noted that "significant other evidence" was available to the defense that could show that AW was not acting consistently with her reported feelings of being uncomfortable with defendant, including a video from the restaurant where she and defendant ate.

"Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purposes of challenging their testimony, he has the right to present his own witnesses to establish a defense. [*Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).]

"However, an accused's right to present evidence in his defense is not absolute." *Unger*, 278 Mich App at 250. A defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008) (quotation marks and citations omitted); see also *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998) (citation omitted).

The trial court barred the admission of Dr. Shiener's testimony for failure to satisfy the requirements of MRE 702. MRE 702, which governs the admissibly of expert testimony, states:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial court determined that defendant failed to meet his burden of showing that the testimony of Dr. Shiener was based on sufficient facts or data, was the product of reliable principles and methods, and that Dr. Shiener had applied the principles and methods reliably to the facts.

On appeal, defendant does not put forth any argument that the requirements of MRE 702 had been satisfied. Instead, he merely avers that the inability to produce Dr. Shiener at trial deprived him of his constitutional right to present a defense. But as already indicated, the application of a rule of evidence is not a basis to find that a defendant has been denied the right to present a defense, unless the rule is "arbitrary" or "disproportionate" to the purpose it was designed to serve. *Scheffer*, 523 US at 308. Defendant also does not put forth any argument that MRE 702 is arbitrary or disproportionate for its intended purpose.

Regardless, it is clear that MRE 702 is not arbitrary or disproportionate to its designed purpose. To require that (1) an expert's testimony be based on sufficient facts or data, (2) an expert's testimony be the product of reliable principles and methods, and (3) the expert has applied the principles and methods reliably to the facts of the case, addresses the rule's purpose adequately and succinctly. Accordingly, because MRE 702 is not arbitrary or disproportionate to its designed purpose, and defendant does not put forth any argument that the requirements of MRE 702 have been satisfied, defendant has failed to show that he was denied his constitutional right to present a defense.

## IV. QUESTIONING OF COMPLAINANT'S MOTHER

Next, defendant argues that the trial court erred when it precluded him from inquiring into certain topics with AW's mother. This Court reviews evidentiary decisions for an abuse of discretion. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). A court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Dixon-Bey*, 321 Mich App 490, 496; 909 NW2d 458 (2017).

During the cross-examination of AW's mother, defense counsel attempted to elicit testimony on what the officer in charge, Sergeant Jessica Sabbadin, had told her. The questioning leading up to the objection was:

> *Q.* Would you agree that there was an opportunity, again, that you had an opportunity to speak to Sergeant Sabbadin, correct?
>
> *A.* Correct.
>
> *Q.* And would you agree that during your discussions it was expressed to you that the Livonia Police Department or Sergeant Sabbadin had some concerns about the consistency of your daughter's statement to the police?
>
> *A.* I wouldn't say about the consistency of her statement, no.
>
> *Q.* Okay.
>
> Did Sergeant Sabbadin advise you that she had any concerns at all regarding your daughter's statements to the police?
>
> *A.* Not in relation to what happened.
>
> *Q.* Not in relation to what happened?

*A.* No.

*Q.* Did she ever identify—and when I say, she, did Sergeant Sabbadin ever identify to you that the statements of your daughter were not consistent with the surveillance from either Qdoba or the Planet Fitness gym?

*A.* No.

The prosecutor objected at this point on the basis of relevance. After the trial court excused the jury, defense counsel made it clear that he ultimately wanted to show that the Livonia Police Department did not proceed with charges, ostensibly, because of inconsistencies the police observed between the surveillance videotapes and AW's statements, until the mother called the department a few days after the incident. The trial court sustained the objection because (1) the prosecution of a criminal charge is not "personal"—it is brought on behalf of the people of the state of Michigan, and (2) the ultimate decision to proceed with charges lies with the county prosecutor, not a local police department or a complainant's mother. Consequently, the court ruled that any probative value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. MRE 403. Defense counsel then asked for clarification if he could inquire into whether the mother called the police department, and the court ruled that he could not.

The trial court did not abuse its discretion. First, it is important to note that the initial topic that defense counsel wanted to explore—whether Sergeant Sabbadin had expressed any concerns about inconsistencies to AW's mother—was allowed and answered. AW's mother answered that Sergeant Sabbadin did not indicate that any inconsistencies existed between the videos and AW's statements. Thus, the true issue is with the topic that defense counsel wanted to explore, but was precluded from doing so—that it was the mother's phone call a few days later that prompted the police to proceed with the charges.

The decision to bring charges does not lie with a complainant's mother. See *People v Potts*, 45 Mich App 584, 589; 207 NW2d 170 (1973). Moreover, if the intent was to introduce through the complainant's mother that *the police* had doubts or questions about the veracity of AW's statements, to avoid the bar on hearsay, those doubts or questions would have to be introduced through the officers themselves.[4] See MRE 801; MRE 802. Therefore, the trial court did not abuse its discretion when it ruled that this area was not proper for defense counsel to explore on cross-examination. Additionally, the probative value of any testimony regarding who wanted to pursue charges was slight to the issue at hand—whether defendant had sexually assaulted AW— and would have been substantially outweighed by the danger of confusing or misleading the jury because the decision to prosecute rests with the prosecutor. See MRE 403.

---

[4] We note that defense counsel did just this. On cross-examination, Sergeant Sabbadin admitted that after viewing the surveillance videos and reviewing AW's statements to the police, she had some "questions" about what occurred. Specifically, it appears that AW had mentioned to the police that she was in distress while at the restaurant with defendant, but the video did not show any signs of her being obviously distressed.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he is entitled to a new trial because he was denied the effective assistance of counsel.

Generally, claims of ineffective assistance of counsel involve a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews a trial court's factual findings for clear error, and any constitutional determinations are reviewed de novo. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because defendant did not raise this issue in a motion for a new trial or request for an evidentiary hearing, and no evidentiary hearing was held, our review "is limited to mistakes apparent on the record." *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003).

Defendants have the right to the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *LeBlanc*, 465 Mich at 578. Generally, to establish ineffective assistance, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Trakhenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). However, counsel's performance must be measured without the benefit of hindsight. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995).

Regarding defendant's argument that counsel was ineffective by failing to object to the introduction of the text messages into evidence on the basis that some of them contained hearsay within hearsay, we have already concluded that the identified text messages did not contain hearsay within hearsay. Thus, any objection on this ground would have been futile, and counsel is not ineffective for failing to advance a meritless argument or raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Likewise, defendant cannot succeed on his argument that trial counsel was ineffective by failing to object to Morse's testimony on the basis that Morse was improperly vouching for the credibility of the complainant. As discussed in Part I of this opinion, Morse's testimony did not vouch for AW's credibility. Thus, any objection on this basis would have been futile. *Id*.

Defendant also argues that trial counsel acted deficiently by failing to ensure that KN's text messages were admitted only for their effect on the listener and not for the truth of the matter asserted. At trial, the prosecutor conceded that KN's text messages were being offered only to provide context for AW's text messages, and not to prove the truth of the matters asserted. Therefore, defense counsel's failure to request a limiting instruction did not fall below an objective level of reasonableness because there was no need for a limiting instruction. In other words, it was reasonable to forgo having the jury instructed on something that already was obvious.

Moreover, there was no question that the extent of KN's knowledge of what happened between AW and defendant was limited to what AW had communicated to her via text. Indeed, KN's assertions of "RAPE" were in response to AW telling KN, "*I was saying no* and told him to

take me home," and that defendant *"made me"* perform fellatio. (Emphasis added.) KN's statements or opinions do not make it more probable that defendant actually did what AW alleged. Therefore, even assuming that counsel performed ineffectively by failing to request a limiting instruction, defendant has not shown that this error had a reasonable probability of affecting the outcome of the case. Accordingly, defendant's ineffective assistance argument fails.

## VI. CUMULATIVE EFFECT OF ERRORS

Finally, defendant maintains that the cumulative effect of all of the errors associated with the prior issues warrants a new trial. But because we have concluded that no errors exist, "a cumulative effect of errors is incapable of being found." *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

## VII. OFFENSE VARIABLE 19

Defendant argues that he is entitled to resentencing because the trial court erred by scoring 10 points for OV 19 of the sentencing guidelines.

We review a trial court's factual determinations with respect to the scoring of offense variables for clear error, and those findings must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A factual finding is clearly erroneous when the reviewing court is left "with a definite and firm conviction that a mistake has been made." *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996).

MCL 777.49 provides the scoring of OV 19 as follows:

> Offense variable 19 is threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services. Score offense variable 19 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) The offender by his or her conduct threatened the security of a penal institution or court ..............................................................................................25 points
>
> (b) The offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services..............................................................................................15 points
>
> (c) The offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order ..............................................................................................10 points
>
> (d) The offender did not threaten the security of a penal institution or court or interfere with or attempt to interfere with the administration of justice or the rendering of emergency services by force or threat of force ........................0 points

"OV 19 applies if there was a 'threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services.' " *People v Hershey*, 303 Mich App 330, 342; 844 NW2d 127 (2013), quoting MCL 777.49. "The trial court must assess 10 points for OV 19 if '[t]he offender otherwise interfered with or attempted to interfere with the administration of justice.' " *Hershey*, 303 Mich App at 342, quoting MCL 777.49(c). This includes, but is not limited to, acts that constitute "obstruction of justice." *Ericksen*, 288 Mich App at 204. This Court has held that the plain and ordinary meaning of the phrase "[to] interfere with the administration of justice" for purposes of OV 19 is "to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *Hershey*, 303 Mich App at 343. In this context, "administering" would mean "meting out" or "dispensing." See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "administer" as "to mete out: DISPENSE"). Thus, 10 points is proper under OV 19 if one hampers, hinders, or obstructs the act or process of meting out or dispensing judgment of individuals by judicial process. In assessing points under OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). This includes the defendant's conduct while in custody, or in the "administration of justice" phase of the sentencing offense. *People v Carpenter*, 322 Mich App 523, 530-531; 912 NW2d 579 (2018).

When scoring OV 19 at sentencing, the trial court found that after the jury announced the first guilty verdict, defendant began to yell, stood up, and took his suit coat off, "as though he was preparing to fight." The court further found that defendant would not stop yelling, despite being told to be quiet by his attorneys and deputies in the courtroom, and would not sit back down. This finding is not clearly erroneous, and on appeal defendant does not contest the court's findings. Instead, defendant simply argues that his actions do not constitute interference with the administration of justice.

Defendant relies on *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016), in which this Court stated that "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." Defendant maintains that his actions were not an attempt to avoid being caught and held accountable. In *Sours*, however, this Court qualified its description for when OV 19 is to be scored by the word "generally." *Id*. Thus, while OV 19 may *generally* be scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense, that is not the only type of conduct for which OV 19 may be scored.

Again, under *Hershey*, 303 Mich App at 343, 10 points is proper under OV 19 if one hampers, hinders, or obstructs the act or process of meting out or dispensing judgment of individuals by judicial process. In this instance, defendant merely disrupted the court proceedings when the jury was attempting to render its guilty verdicts. Although defendant physically stood up and removed his suit coat as if readying for a fight, in direct contravention of the court's instruction to remain still and quiet during the verdict, defendant's actions did not hamper, hinder, or obstruct the act of meting out or dispensing judgment. Defendant was handcuffed and removed from the courtroom, and his family and friends were also escorted out. The court clerk then twice repeated her questions to the jury foreperson on the verdict of both counts, and the foreperson twice confirmed the two guilty verdicts. The jury was polled, and the judge accepted the verdict. Despite defendant's outburst, the verdict was rendered, and defendant convicted. Therefore, the

trial court clearly erred when it assessed defendant 10 points for OV 19 under MCL 777.49(c) because defendant's conduct did not rise to the level of an actual interference, or an attempt to interfere, with the administration of justice.

"If a scoring error does not alter the guidelines range, resentencing is not required. However, a defendant *is* entitled to resentencing if his or her sentence is based on an inaccurate guidelines score that affects the applicable sentencing guidelines range." *People v Rhodes*, 305 Mich App 85, 91; 849 NW2d 417 (2014) (quotation marks and citations omitted). According to the transcript of defendant's sentencing hearing, his total OV score was 75 points, resulting in an OV level of VI, and a guidelines range for defendant's minimum sentence as 57 to 95 months' imprisonment (his prior record variable (PRV) score was 10 points). See MCL 777.63. If defendant's OV score is corrected, his total OV score is decreased to 65 points, and his OV level would change to level V. *Id*. This would result in a different guidelines range for defendant's minimum sentence of 51 to 85 months' imprisonment. *Id*. Defendant's current minimum sentence of 95 months' imprisonment is therefore outside the correct guidelines range, and defendant is entitled to resentencing. *Rhodes*, 305 Mich App at 91.

## VIII. CONCLUSION

Defendant's convictions are affirmed, the trial court's scoring of 10 points for OV 19 is reversed, and we remand this case for resentencing. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel

-11-